## Norfolk

### MARGED G. HARRIS

v.

### MILTON LANIER WOODRUM

No. 1167-85

Decided November 18, 1986

COUNSEL

E. Thomas Cox (Patten, Wornom & Watkins, on brief), for appellant.

Stephen D. Harris (McGuire, Woods & Battle, on brief), for appellee.

OPINION

**BAKER, J.** — Appellant, Marged G. Harris, formerly Mary Marged Woodrum, (herein referred to as wife), appeals from the August 8, 1985 judgment of the York County Circuit Court (trial court) which denied her motion to require Milton Lanier Woodrum (husband) to pay for their fifteen year old daughter's schooling at Foxcroft, a private boarding school in Middleburg. The trial court, after a hearing *ore tenus* on June 17, 1985, ruled that husband did not unreasonably withhold his approval of daughter attending the school.

The parties married on April 10, 1966, separated on November 1, 1975, and divorced on June 21, 1977. A marital settlement agreement dated March 21, 1977 (amended May 12, 1983) was incorporated by reference in the divorce decree. When husband refused to pay the cost associated with daughter's matriculation at Foxcroft, wife filed a motion in the trial court alleging that "such refusal by the defendant is contradictory to the order of this court as it is *per se* unreasonable and will cause harm to the infant daughter of the parties." The section of the agreement pertinent to the resolution of this case is Paragraph 5 entitled, *Support, Maintenance, and Private Primary and Secondary Schooling for Children.* It reads in part:

> In addition, the Husband agrees to pay tuition, room and board of private, primary, preparatory and secondary schooling as and when due for the children, or either of them, subject to the Husband's approval of the particular school or schools prior to the child's being enrolled therein, which approval the Husband agrees not to unreasonably withhold.

When the agreement was executed, daughter was six years old. In the ensuing years, she enrolled in Jamestown Academy; in at

least two public schools (Magruder and Waller Mill); and in Hampton Roads Academy. At the time this action was initiated she attended Walsingham Academy, a day school in Williamsburg, near where she lived with wife. She expressed a desire to attend a boarding school and, with wife's approval, applied and was accepted at Foxcroft.

Wife felt that the education at Foxcroft would be better than at Walsingham, that Foxcroft had a better sports program, and that daughter had her heart set on Foxcroft. On direct examination, wife appeared to have personal knowledge of daughter's record at Walsingham. She responded to her attorney's question as follows:

Q: And the child's grades at Walsingham?

A: She has had sort of an up and down pattern. But she ended up with B's and C's. She has had some difficulty with Latin and has pulled those grades up.

On cross examination, in response to husband's attorney, it was revealed that she had not seen daughter's report card:

Q: And you say her grades there ended up in the B to C range?

A: I haven't seen the report card. She told me this morning she left it at a neighbor's, but she tells me that her grades are B's and C's.

In addition, the trial judge who reviewed daughter's grades remarked: "And looking at her grades (they were shown actually to be C's and D's), I think you need to do something to try to get things going right."

Following daughter's application to Foxcroft, wife decided to pursue a Masters of Law degree in South Royalton, Vermont. Husband did not generally favor boarding schools, stating that if a structured environment was needed "the impetus should come from home," and that the responsibility should not be turned "over to a boarding school." He asserted that it was not a good idea for someone of daughter's age to be taken out of a good home and placed in a boarding school atmosphere. He viewed a home environment as better for their fifteen year old daughter and noted that there were good public and private day schools in Vermont,

near wife's school, or in Roanoke, near him. He added that his decision in part was based on his own prior personal experience in boarding school.

While contending that basically he was opposed to boarding schools for their fifteen year old daughter, he was not opposed to them in every case. If there was a sound reason for a child to be sent to a boarding school, then he would concur. He noted that when a sound reason was given for placing his son in a private boarding school he agreed. The reason given him was that son was required to repeat a grade in his school. The headmaster felt that he should not drop back a year in the same school and further recommended that he be enrolled in a boarding school. Husband stated that he was given no compelling reason for daughter to leave a good home environment at this time. In fact, he thought that it would probably be counterproductive.

When husband learned that wife intended to enroll in a school in Vermont, he "looked into schools up there" which would be suitable for daughter. There was a public school and a private Catholic school within forty-five minutes of South Royalton, and a private day school within thirty-five minutes. He received information that all three schools' average SAT scores were equal to or higher than Foxcroft, and that the two private schools were college oriented.

Daughter's teachers expressed opinions that she was capable of achieving a better academic record than she had produced. Husband's position was that he had the right to expect daughter to put forth her best efforts to improve her record before granting her desire to attend the school with the better sports program. While the cost[1] of Foxcroft was not a controlling factor in his decision, husband concluded that before such expenditure was made, a structured home environment should be instituted and daughter should demonstrate her willingness to attain the level of her capabilities.

The issues submitted to the trial court by wife's petition are twofold: (1) whether husband unreasonably withheld consent to daughter's enrollment at Foxcroft; and (2) whether the evidence established that harm would be caused to daughter as a result of

---

[1] Estimated to be between $10,000 and $11,500, annually.

such refusal.[2]

In pertinent part the trial court's finding was as follows:

UPON CONSIDERATION WHEREOF, it is AD-JUDGED, ORDERED and DECREED that it does not appear to the Court that the Defendant's approval of the private school for his infant daughter has been unreasonably withheld, and on account thereof, the Plaintiff's Motion is hereby denied.

 "Property settlement agreements are contracts; therefore, we must apply the same rules of interpretation applicable to contracts generally." *Tiffany v. Tiffany*, 1 Va. App. 11, 15, 332 S.E.2d 796, 799 (1985); *see also Paul v. Paul*, 214 Va. 651, 653, 203 S.E.2d 123, 125 (1974).

We adhere to the "plain meaning" rule in Virginia: "[W]here an agreement is complete on its face, is plain and unambiguous in its terms, the court is not at liberty to search for its meaning beyond the instrument itself . . . . This is so because the writing is the repository of the final agreement of the parties."

*Berry v. Klinger*, 225 Va. 201, 208, 300 S.E.2d 792, 796 (1983) (quoting *Globe Co. v. Bank of Boston*, 205 Va. 841, 848, 140 S.E.2d 629, 633 (1965)). There is no ambiguity in the contract and its terms are clearly expressed. The rights of the parties are grounded in their contract which has been ratified by decree in the divorce proceeding and made enforceable therein. *See Paul*, 214 Va. at 653, 203 S.E.2d at 125 (1974). Insofar as this proceeding is concerned, the contract provides that husband is obligated to pay tuition, room and board of a private school which he approves, limited only by the restriction that he will not unreasonably withhold his approval.

Wife notes that in the agreement husband agreed to pay "room and board." She asserts that this is proof that the parties anticipated that attendance in a boarding school was a possibility and, therefore, for husband to now withhold approval of daughter's en-

---

[2] The record is devoid of any evidence which would tend to support a finding that harm would befall daughter as a result of her failure to attend Foxcroft school.

trance into Foxcroft is "*per se* unreasonable" and in breach of the contract. Such construction of the contract, however, renders nugatory the words, "subject to Husband's approval." We decline to give the contract that construction.

■ Wife also contends that husband arbitrarily refused to approve daughter's entry into Foxcroft. The trial court considered this contention and rejected it. The judgment of a trial court sitting in equity, when based upon an *ore tenus* hearing, will not be disturbed on appeal unless plainly wrong or without evidence to support it. *Carter v. Carter*, 223 Va. 505, 508-09, 291 S.E.2d 218, 220 (1982); Code § 8.01-680. Thus, we must decide whether the finding of the trial court was plainly wrong or without evidence to support it.

The trial judge who views the witnesses as their testimony is given is in the better position to evaluate the evidence than an appellate court which reviews only a cold record. Husband's sincerity, while not conclusive, is, in part, a measure of his good faith. The trial court's judgment resolved the issue in husband's favor.

Husband was a product of a private boarding school. His thought process was based on his personal experience. He demonstrated his belief that there may be circumstances which create good reason to enroll a child in a private boarding school, using their son's problem as an example. In support of his belief that it would be in daughter's best interest to be guided by a home-structured environment, he looked into five private day schools whose academic reputations were equal to or better than Foxcroft. Three were within easy reach of the place wife would be living during the academic year, and two were near his home in Roanoke. He was willing to pay the cost of any of these.

In addition, husband expressed a concern that daughter was not performing to the level of her academic capabilities. There is no evidence in this record which supports a contention that a move to Foxcroft would cause daughter to improve her academic record. No one contended that Foxcroft was not a quality school with a deserved reputation; however, daughter's only stated reasons for the transfer to Foxcroft were that she desired to do so and that it had a better sports program. There was no showing that she would improve her academic standing or make an attempt to do so.

There is some evidence that she might improve her athletic prowess because of an expanded program but nothing to suggest that her grades would improve from the C's and D's to the the B's and C's wife mistakenly thought she had earned. While the cost (between $10,000 and $11,500, annually) was not stated as a reason for withholding his approval, husband reasoned that the cost of the experiment was too great since no compelling reason was shown to justify daughter's enrollment at Foxcroft.

The trial court obviously concluded that it was reasonable for husband to assert that before taking the high cost gamble of Foxcroft, it would be to the best interest of all parties concerned to follow a home-structured plan which would allow daily monitoring of academic progress. The evidence viewed as a whole discloses that husband's action was not arbitrary and clearly supports the judgment of the trial court.

Accordingly, the judgment of the trial court is

*Affirmed.*

Barrow, J., and Cole, J., concurred.