**Richmond**

WILLIAM W. JONES, II

v.

HELEN A. JONES

No. 2271-93-1

Decided November 22, 1994

COUNSEL

Timothy S. Fisher (Overman, Cowardin & Martin, on brief), for appellant.

Ballard P. Wood, for appellee.

OPINION

**KOONTZ, J.**—By order entered on November 1, 1993, the Circuit Court of York County found William W. Jones, II in contempt and ordered him to pay certain college expenses of his adult children to Helen A. Jones, his former wife, pursuant to the provisions of the parties' March 14, 1991 separation agreement. That agreement was previously incorporated into the parties' final divorce decree entered on August 15, 1991. Relying primarily upon our decision in *Tiffany v. Tiffany*, 1 Va. App. 11, 332 S.E.2d 796 (1985), Mr. Jones on appeal asserts that the plain meaning of the parties' agreement required his approval of the selection of a particular college as a condition of his obligation to provide support for his children's college education. For the reasons that follow, we agree and reverse the chancellor's decision.

The significant facts are not in dispute. At the time the parties entered into their separation agreement, their daughter, Christine, was nineteen and their son, Evan, was seventeen. In addition to resolving matters of property rights, spousal support, and child custody and support, the agreement contains provisions for the children's college educational expenses. In pertinent part, Paragraph 5 of the agreement provides:

> Both parties recognize the issue of college educations for the children, and Husband shall contribute sixty percent (60%) and Wife shall contribute forty percent (40%) to the college education of both children. Both parents shall agree on the college of attendance and the children shall make satisfactory progress in that college program. The college education of the minor children shall be completed in five (5) years, with the parental assistance ceasing at that time.

This provision of the parties' agreement was substantially incorporated into the final divorce decree and the parties were ordered to

"comply with same."

At the time of the entry of the divorce decree, Christine was attending the Savannah College of Art and Design. The following academic year she attended Christopher Newport University in order to reduce tuition expenses. The parties mutually agreed to Christine's attendance at these institutions and paid their proportional shares of the educational expenses involved.

The following academic year, Christine decided she wished to attend Virginia Commonwealth University (V.C.U.). After being accepted, she subsequently enrolled there. Although Christine discussed this change of colleges with Mr. Jones, he did not agree that she should attend V.C.U. Christine is an honor student and anticipates graduation well within the five year period specified in the agreement. Mr. Jones refused to pay any of Christine's educational expenses at V.C.U.

Evan graduated from high school in 1993 and discussed his choice of colleges with his parents, maintaining Christopher Newport University as a possibility. Randolph-Macon College was also discussed; however, Mr. and Mrs. Jones agreed that this college was beyond their financial means. Nevertheless, without Mr. Jones's agreement, Evan enrolled at Randolph-Macon College and subsequently requested Mr. Jones to pay his share of the tuition pursuant to the parents' separation agreement. Mrs. Jones acceded to Evan's selection of Randolph-Macon College. She maintains that grants and scholarships made the cost of attending Randolph-Macon College equivalent to the cost of attending Christopher Newport University.[1] As is the case with his sister, Evan is an honor student at Randolph-Macon College and anticipates graduation in the usual four year period. Mr. Jones refused to pay any of Evan's educational expenses at Randolph-Macon.

Upon the filing of a notice in the circuit court by Mrs. Jones seeking a show cause order against Mr. Jones alleging contempt for failure to abide by the divorce decree and the incorporated separation agreement, the chancellor held an *ore tenus* hearing. At that hearing, Mr. Jones testified that, although he wanted his

---

[1] Although it is not clear from the record, apparently had his children attended Christopher Newport University, Mr. Jones was willing to pay his proportional share of the expenses incurred.

children to have college educations, he had become estranged from them and had "no input" into their college selection process. He maintained that under the separation agreement his consent to the selection of a particular college was a requirement for his obligation to contribute to the expense of his children's attendance at that college.

In a colloquy between counsel and the chancellor following receipt of the evidence, the chancellor explained his reasoning in reaching his decision. The chancellor initially noted that the language of the agreement that "[b]oth parents shall agree on the college of attendance" is "one of the most ridiculous things I've ever seen in a property settlement agreement." The chancellor then concluded that Mr. Jones unreasonably withheld his agreement to the selection of the colleges attended by the children "because of his animosity towards his ex-wife" rather than because of a disagreement with the particular selections. The chancellor then reasoned that "looking at this matter totally in the light of what is best for these two adolescents, the children of his, and not for either of these parties" and that "in all fairness to these two children, [Mr. Jones] should contribute to their education." Accordingly, the chancellor found Mr. Jones in contempt and ordered him to pay sixty percent of the children's college expenses.

We note initially that, although we disagree with the chancellor's interpretation of the applicable law in this case, we do not fault the sentiment of fairness expressed in his reasoning. Regrettably, the facts of this case are not atypical of those situations in which the welfare and best interests of children become entangled and diminished in a dispute between their divorced parents. Here, the record clearly established that the parents wanted their children to obtain the benefits of college educations. Moreover, it is clear that a college education is well within the abilities of the children and the combined financial resources of the parents. The dispute is merely over how those financial resources are to be expended by the selection of a particular college experience. In such a case, if "just plain out-and-out fairness" to the parties' children was the test upon which the parties' agreement must be determined, we would be in full accord with the chancellor's conclusions.

■ A separation agreement, however, is a contract and must be construed as such. Where the agreement is plain and unambigu-

ous in its terms, the rights of the parties are to be determined from the terms of the agreement and the court may not impose an obligation not found in the agreement itself. *Harris v. Woodrum*, 3 Va. App. 428, 432, 350 S.E.2d 667, 669 (1986).

In *Tiffany* and in *Harris*, as here, the dispositive issue was whether the terms of the agreement provided one parent the right to withhold payment for educational expenses as a result of the lack of agreement between the parents in the selection of a particular school for their child to attend. In *Tiffany*, we recognized that estranged parents could provide in their separation agreements that support obligations for college expenses would not arise where a child did not enroll in or attend a school mutually acceptable to the parents. 1 Va. App. at 18, 332 S.E.2d at 801. There, however, we found that the agreement did not provide a "veto" right for the father. The pertinent part of the agreement provided that "as an express condition of the Husband's obligation, the Husband shall be entitled to participate in the decision making process as to the college to be attended." *Id.* at 16-17, 332 S.E.2d at 800. Finding no ambiguity in this term of the agreement and that the father had participated in the decision-making process, we held that the express condition had been satisfied. Accordingly, under these circumstances we further held that the father was required to pay the college expenses of his son under the terms of his agreement with the mother. *Id.* at 19, 332 S.E.2d at 801.

In contrast, in *Harris*, we reached a different but consistent result. There, the father in a marital settlement agreement promised to pay the educational expenses of his daughter "subject to [his] approval of the particular school or schools prior to the child's being enrolled therein, which approval [he] agrees not to unreasonably withhold." 3 Va. App. at 429, 350 S.E.2d at 668. The record there established that the father was willing to pay for the expenses of several private schools where the child could also benefit from a "home-structured environment" by living in either parent's home. The father had investigated the particular private school selected by the child and the mother and rejected it because the child would be away from home and because the reason for its selection was more for its sports program than its academic program. *Id.* at 433, 350 S.E.2d at 670. Under these circumstances, we affirmed the chancellor's decision that the father had not unreasonably withheld his approval of the particular school

and was not required to pay for the child's educational expenses pursuant to the terms of the parties' agreement. *Id.* at 434, 350 S.E.2d at 670.

The Joneses' agreement does not contain ambiguous terms. It does not, as in *Harris*, condition the father's right to withhold support upon the reasonableness of his rejection of a particular school. Moreover, it does not limit Mr. Jones's obligation to mere participation in the selection process of a particular school as in *Tiffany*. Rather, the express terms of the agreement provide that Mr. Jones "shall contribute" a portion of the educational expenses of his children and "shall agree on *the* college of attendance." These terms linked together one sentence after another in the same paragraph, can only be read to condition Mr. Jones's obligation to pay on his agreement to the college his child attends. To read those terms otherwise deprives either one or the other of any signficance. In short, the Joneses' agreement provides the "veto" we found absent in *Tiffany*.

No law requires a parent to provide the expenses of an adult child to attend college. Such is true whether the parents are married or divorced. Thus, where parents seek to include such an obligation in their separation contract, the plain and unambiguous terms of their contract establish the rights and obligations of the parties. Here, the contract provides Mr. Jones the right to "veto" the selection of a particular college and, by exercising that right, to eliminate any obligation to pay a parental share of the expenses incurred at a college rejected by him. We are not at liberty to impose a limitation on that veto right not found in the terms of the parties' contract even though the parties could easily have done so.

It is undisputed that Mr. Jones did not agree for his children to attend V.C.U. or Randolph-Macon College. Accordingly, the chancellor erred in requiring that Mr. Jones contribute to the payment of the educational expenses incurred by his children at these institutions.

The chancellor also awarded attorney's fees to Mrs. Jones for her prosecution of the show cause order. Other issues apart from the failure to provide educational support were initially addressed in that hearing. It appears that these issues were settled prior to the entry of the contempt order and were at best collateral to the

central issue. For these reasons, we are unable to determine whether the chancellor's award of fees was predicated solely or partly on the erroneous contempt finding. Accordingly, we remand the case to the chancellor for a redetermination of the appropriateness of awarding attorney's fees.

For these reasons, we reverse the chancellor's decision and remand for further proceedings consistent with this opinion.

*Reversed and remanded.*

Barrow, J., and Elder, J., concurred.