COURT OF APPEALS OF VIRGINIA


Present:  Chief Judge Moon, Judges Fitzpatrick and Annunziata
Argued at Alexandria, Virginia


THOMAS F. FRICKE
                                      MEMORANDUM OPINION[*] BY
v.        Record No. 1184-96-4    JUDGE JOHANNA L. FITZPATRICK
                                         JANUARY 7, 1997
ROSANNE FRICKE


                FROM THE CIRCUIT COURT OF FAIRFAX COUNTY
                      Marcus D. Williams, Judge

          Sharon K. Lieblich (Sharon K. Lieblich, P.C.,
          on briefs), for appellant.

          Philip F. Hudock for appellee.


     On appeal, Thomas F. Fricke contends that the trial court

erred (1) in failing to interpret and modify the parties'

settlement agreements in light of his changed economic

circumstances and (2) in awarding Rosanne Fricke attorney's

fees.[1]  We find no error and affirm the judgment of the trial

court.

_____

        [*]Pursuant to Code § 17-116.101 this opinion is not
designated for publication.

        [1]The husband also argues that "[t]he trial court erred in
adjudicating a conditional contempt in advance of an event that
might constitute contempt and thereby depriving [husband] of an
opportunity to raise any defenses if unable to comply with the
Court's order."  At the hearing on the Rule to Show Cause filed
by the wife, the court granted the husband's request for time to
pay the expenses due, and ruled that failure to make timely
payment would constitute contempt.  However, the husband paid the
arrearage and attorney's fees as ordered and no contempt
proceedings were brought.  Thus, we find this issue to be without
merit.

## BACKGROUND

Thomas F. Fricke (husband) and Rosanne Fricke (wife) were married in 1976 and two children were born of the marriage. At the time of this appeal, their daughter, Katherine, was a sophomore at The Tisch School of Arts at NYU and their son, Thomas, was in the tenth grade at a private school in Fairfax County.

In 1990, the parties separated and entered into a property settlement agreement (PSA) dated March 19, 1990. Pursuant to the PSA, the husband agreed to pay the children's private school expenses, basic monthly child support, and to share in proportion to his gross income the total cost of each child's four-year college education.

The parties were divorced in 1992. The final decree of divorce incorporated the PSA. Shortly after the final decree was entered, the husband filed a motion to modify support. The trial court denied the husband's motion, and found that it was in the children's best interests to remain in private school. On appeal, we affirmed the trial court's decision. See Fricke v. Fricke, Record No. 1679-92-4, slip op. at 4 (Va. July 6, 1993).

In 1994, the husband's failure to make the private school tuition payments prompted further litigation between the parties, which was resolved by a second settlement agreement dated April 1994. The agreement resulted in the withdrawal of the pending litigation between the parties and in the compromise of various

claims of the parties.  In this agreement, the husband again agreed to pay the children's private school expenses, and specifically "waive[d] any challenge to his obligations to make those payments."  Additionally, the agreement set basic child support and provided for an adjustment of support upon the husband's change of income.  This agreement was incorporated into the final decree on May 13, 1994.

After a change in the husband's employment status, he filed a motion to modify his child support obligations.  In response to his failure to pay the children's private school and college expenses, the wife filed a motion to recover the arrearage due and a petition for a rule to show cause.  In the evidentiary hearing held on April 18, 1996, the trial court affirmed the husband's obligation to pay private school and college expenses, decreased his basic child support payment, and awarded the wife the arrearage and attorney's fees.

## I.  COLLEGE EXPENSES

The husband contends that he entered into the PSA with the intent that it would "impose on him a reasonable burden of education expenses" and that the PSA mandates a consultation between the parties regarding the children's education.  He argues that the trial court erred in concluding that it did not have the discretion to establish the proper cost of college and in failing to adopt a "reasonable" interpretation of the agreement.

"On appeal, we construe the evidence in the light most favorable to wife, the prevailing party below, granting to her evidence all reasonable inferences fairly deducible therefrom." Donnell v. Donnell, 20 Va. App. 37, 39, 455 S.E.2d 256, 257 (1995) (quoting McGuire v. McGuire, 10 Va. App. 248, 250, 391 S.E.2d 344, 346 (1990)).

Separation agreements and property settlement agreements are contracts. See Tiffany v. Tiffany, 1 Va. App. 11, 15, 332 S.E.2d 796, 799 (1985), and Jones v. Jones, 19 Va. App. 265, 269, 450 S.E.2d 762, 763 (1994). "[T]herefore, we must apply the same rules of interpretation applicable to contracts generally." Tiffany, 1 Va. App. at 15, 332 S.E.2d at 799. Where a settlement agreement is unambiguous, its meaning and effect are questions of law to be determined by the court. Id. Moreover, "[w]here the agreement is plain and unambiguous in its terms, the rights of the parties are to be determined from the terms of the agreement and the court may not impose an obligation not found in the agreement itself." Jones, 19 Va. App. at 268-69, 450 S.E.2d at 764.

The evidence established, and the husband admits, that the final decree incorporated the PSA and specifically required the husband to pay his "proportional" share of his children's college expenses. The husband's intention to pay for these costs is firmly and unequivocally stated in Paragraph 6 of the PSA:

> COLLEGE EDUCATION: The parties hereto agree to share the cost of a four year college education for each child with each party

4

contributing a percentage of the total cost of said four year college education for each child including tuition, books, room and board, which contribution shall be in proportion to each party's gross income at the time such expenses are due and payable.

Although the second agreement modified certain provisions of the PSA, it did not address the parents' obligation to pay the children's college expenses. However, as shown by the following language, the second agreement expressly affirmed the husband's "understanding" of the "consequences" of the agreement:

This Settlement Agreement shall not modify any provision of the PSA, except to the extent expressly set forth in this Settlement Agreement. <u>All provisions of the PSA not expressly modified by this Settlement Agreement shall remain in force and effect, as originally written and agreed to by the parties.</u>

\* \* \* \* \* \* \*

Each party acknowledges that he or she has retained counsel to discuss this Settlement Agreement and all matters related thereto, and that they execute the Agreement <u>with full understanding of its consequences</u>, and not as the result of any duress or undue influence from any source.

(Emphasis added).

"No law requires a parent to provide the expenses of an adult child to attend college. Such is true whether the parents are married or divorced. Thus, where parents seek to include such an obligation in their separation contract, the plain and unambiguous terms of their contract establish the rights and obligations of the parties." <u>Jones</u>, 19 Va. App. at 270, 450

5

S.E.2d at 764.  Such is the case here.

Finally, the husband argues that the contract required, as a condition precedent to his paying the college expenses, the parties to "confer" with each other and arrive at a "harmonious policy."  However, the clear language of the agreements refutes this claim.[2]  "Whatever his intentions may have been and no

[2]The husband attempts to distinguish Tiffany, 1 Va. App. 11, 332 S.E.2d 796 and to analogize his position to Jones, 19 Va. App. 265, 450 S.E.2d 762.  However, we disagree with his interpretation of these cases.  The rationale of both cases applies to the instant case.  In Tiffany, unlike the case at bar, the contract contained certain provisions that conditioned the husband's support obligation, including a provision that specified "as an express condition of the Husband's obligation, the Husband shall be entitled to participate in the decision making process as to the college to be attended by the said children."  Tiffany, 1 Va. App. at 16-17, 332 S.E.2d at 800.  We overruled the trial court's finding that this language required the parties to reach a mutual agreement and held:

> While we acknowledge that the parties may have expected that a mutual agreement would result from their joint participation in the college selection process, they did not express this expectation as a condition precedent to [husband's] obligation to pay college support.  The parties simply did not provide for what would happen if the son's initial selection of a college was unacceptable to either of the parents.
>
> The plain language of the agreement does not require [the wife] or the son to select a college acceptable to [the husband].  The agreement does not confer upon [the husband] the right to reject a school . . . .  We are not at liberty to find a veto power where the language used by the parties does not confer one.

Id.  The same reasoning applies to the instant case.  Here, the plain language ("confer") does not give the husband the right to "veto" his daughter's choice of colleges.

6

matter how reasonable those intentions may appear now, the contract language demonstrates that he bargained only for the right" to confer with his ex-wife on all important matters pertaining to the children's health, welfare, education, and upbringing. <u>Tiffany</u>, 1 Va. App. at 18, 332 S.E.2d at 801. Accordingly, we hold that the trial court did not err in refusing to modify these agreements to include the term "reasonable" as advocated by the husband.

## II.  PRIVATE SCHOOL TUITION

Husband next argues that the trial court erred in declining to modify his obligation to pay for his son's private school tuition.  "The decree of the [c]hancellor determining questions of fact on conflicting evidence <u>ore</u> <u>tenus</u> has the weight of a jury verdict, and will be permitted to stand unless plainly wrong or without evidence to support it." <u>Featherstone v. Brooks</u>, 220 Va. 443, 448, 258 S.E.2d 513, 516 (1979) (citing <u>Mundy v. Hesson</u>, 215 Va. 386, 392, 209 S.E.2d 917, 921 (1974)).  We find no error in the trial court's decision.

Code § 20-108 provides, in pertinent part:
The court may, from time to time after

In <u>Jones</u>, the agreement at issue provided the husband with the express right to "veto" the selection of a particular college, and by exercising that right, to eliminate any obligation to pay his parental share of the expenses incurred at a college he rejected. <u>See</u> <u>Jones</u>, 19 Va. App. at 270, 450 S.E.2d at 764.  No such express language is present in the instant case. Here, the husband admits that he "did not argue for a veto," but he argues that he sought "a reasonable interpretation of his contract."  However, the record shows that he could not point to any contractual provision that contained this directive.

7

> decreeing as provided in § 20-107.2, . . .
> revise and alter such decree concerning the
> care, custody, and maintenance of the
> children and make a new decree concerning the
> same, as the circumstances of the parents and
> the benefit of the children may require.

A trial court "retains continuing jurisdiction to change or modify its decree relating to the maintenance and support of minor children." Kelley v. Kelley, 248 Va. 295, 298, 449 S.E.2d 55, 56 (1994) (citing Code § 20-108 and Featherstone, 220 Va. at 446, 258 S.E.2d at 515). Although Code § 20-108.2 establishes a "rebuttable presumption that the amount of the award shall be the sum resulting from applying the guidelines," it may be error for a trial court not to consider whether the presumptive amount is "'unjust or inappropriate' by taking into account the child support provisions of the consent decree or amount agreed upon between the parties." See Watkinson v. Henley, 13 Va. App. 151, 154, 409 S.E.2d 470, 471 (1991).

Additionally, the husband must demonstrate by a preponderance of the evidence a material change in circumstance for the trial court to consider whether that change justifies a modification of support award. Only then will the court consider the "'present circumstances of both parties and the children.'" Kaplan v. Kaplan, 21 Va. App. 542, 547, 466 S.E.2d 111, 113 (1996) (quoting Watkinson, 13 Va. App. at 156, 409 S.E.2d at 473); see also Crabtree v. Crabtree, 17 Va. App. 81, 88, 435 S.E.2d 883, 888 (1993).

> Where . . . the [husband] seeks a reduction
> in the amount of payments for the support and

8

maintenance of his minor children because of a change in his financial condition, he must make a full and clear disclosure relating to his ability to pay. He must also show that his lack of ability is not due to his own voluntary act or because of his neglect.

Hammers v. Hammers, 216 Va. 30, 31-32, 216 S.E.2d 20, 21 (1975).

In the case at bar, the final decree included a provision regarding the parents' payment responsibility for the children's primary and secondary school education:

> In accordance with Paragraph 6.B. of the Agreement, the Defendant shall pay the Complainant private school tuition, as set forth below:
>
> Commencing June 1, 1990, and thereafter so long as either child attends elementary or secondary school and is enrolled in an independent school which charges tuition for such enrollment, Husband agrees to pay one hundred percent (100%) of the total cost and related expenses, as and when the same may become due and payable. At his option, Husband may remit such amount or amounts as may from time to time be due for such tuition either directly to the institution charging the same or to the wife.

(Emphasis added). The parties' second agreement, made in April 1994 and incorporated by reference into the parties' final decree of divorce, reaffirms this obligation:

> Thomas agrees to pay the tuition and related expenses for the attendance of his son, Thomas, at private school for academic year beginning September, 1994, and continuing until his son, Thomas, completes the 12th Grade, in accordance with Paragraph 6(B) of the PSA, and waives any challenge to his obligation to make those payments.

(Emphasis added). In 1992, the trial court determined that it

was in the best interests of the children to remain in private school. We affirmed this decision and held that,

> Contrary to the husband's contentions, the trial court's determination that it was in the children's best interest to remain in private school does not demonstrate an abuse of discretion. In balancing the equities, the trial court properly considered the evidence presented by both sides regarding the effect that a change in schools might have upon the children.

See Fricke v. Fricke, Record No. 1679-92-4, slip op. at 3-4 (Va. July 6, 1993). At the hearing on April 18, 1996, the trial court found as follows:

> In regard to the private school obligation, the Court recognizes this being a signed agreement which was, again in '94, it was expressed to as a 100 percent obligation of the father to pay the private schooling of the son, and further that he would not challenge it.
>
> The evidence would indicate that [sic] is an agreement of the parties, and the Court finds no basis to modify that agreement.

In accordance with this finding, the court ordered that "[t]he [husband's] obligation to pay private school expenses is a matter of the 1994 Settlement Agreement between the parties under which the [husband] agreed to pay 100% and not challenge these payments."

Clearly, the trial court did not find that it was without jurisdiction to modify the husband's obligation to pay the private school tuition. Rather, the court evaluated the evidence presented and declined to make the modification sought by the

10

husband. The court considered that, in previous litigation, it determined that private school was in the children's best interest, and also that the parties had consistently contracted for the husband to provide the tuition costs. The husband made no showing that private school is not still in the son's best interest. Therefore, we affirm the decision of the trial court.

### III. MODIFICATION OF BASIC SUPPORT

The husband's next contention is that the trial court erred by "inadequately failing to take into account [his] rapidly increasing private school and college indebtedness and rapidly decreasing income when adjusting the amount of child support payable by him." Contrary to this argument, the evidence shows that the trial court considered the husband's present financial circumstance.

At the April 18, 1996 hearing, the trial court ordered a downward adjustment of the husband's basic child support obligation:

> The basic child support shall be modified with the March 1, 1996 payment. The Court accepts the Complainant's guideline calculation for the presumptive amounts: Mother's gross: $1818/month; Father's gross: $5,293/month. Father's presumptive guideline payment: $715/month. Because of other obligations of the father for his children, the guideline is reduced by $140/month to $575/month.

The court explained:

> For the purposes of this proceeding, having considered the evidence and looking at the circumstances of the parties with regard to their income earnings, I make the following

11

findings:

> I find that the '95 income for the father is the appropriate income and that it becomes $5,293 on a monthly basis. I will use the mother's income as presented by the mother, the $1,818. I don't believe the husband has supported his contention that there should be imputation of income. The evidence does not support that.

> With regard to the guideline worksheet, for the purposes of determining the level of presumptive level of guideline support, I find that the father's obligation . . . is $715 . . . less the amount of direct payment of medical insurance.

> \* \* \* \* \* \* \*

> I will make a further adjustment -- I will deviate from the guidelines . . . in your favor given your other obligations . . . . I will allow a further deviation of $140, which basically represents the payments you will be making on the loan for college.

Moreover, the husband failed to present sufficient proof to establish either his 1996 income or the fact that it is "rapidly decreasing." See Hammers, 216 Va. at 32, 216 S.E.2d at 21-22. The husband's child support guideline worksheet reflected his calculation that his obligation, before deduction, totalled $727.50 per month. Accordingly, we find that the evidence supports the trial court's decision, and we affirm its determination of the husband's basic child support obligation. See Featherstone, 220 Va. at 448, 258 S.E.2d at 516.

## IV. ATTORNEY'S FEES

"An award of attorney's fees is a matter submitted to the trial court's sound discretion and is reviewable on appeal only

12

for an abuse of discretion." <u>Graves v. Graves</u>, 4 Va. App. 326, 333, 357 S.E.2d 554, 558 (1987). The trial court must have evidence justifying or explaining the amount of attorney's fees awarded. <u>See</u> <u>Westbrook v. Westbrook</u>, 5 Va. App. 446, 458, 364 S.E.2d 523, 530 (1988).

In this case, the PSA provided that "in the event of any default on the part of either party hereto, the costs and expenses of <u>any</u> litigation or other action of any nature necessary to compel compliance herewith, including attorney's fees shall be borne by the defaulting party." (Emphasis added). The evidence supported the judge's award of fees for the trial. <u>See</u> <u>Featherstone</u>, 220 Va. at 448, 258 S.E.2d at 516.

For the foregoing reasons, we affirm the trial court and remand for an award of attorney's fees incurred by the wife in this appeal.

<u>Affirmed.</u>