COURT OF APPEALS OF VIRGINIA


Present:   Chief Judge Felton, Judges Benton and Petty
Argued at Richmond, Virginia


A. BRUCE ERICSON
                                                    MEMORANDUM OPINION[*] BY
v.        Record No. 2411-06-2          CHIEF JUDGE WALTER S. FELTON, JR.
                                                            JULY 3, 2007
CATHERINE ERICSON


FROM THE CIRCUIT COURT OF HENRICO COUNTY
Catherine C. Hammond, Judge

Phoebe P. Hall (Melissa S. VanZile; Hall & Hall, PLC, on briefs),
for appellant.

Laurie L. Riddles (Joseph Blackburn, Jr.; Blackburn, Conte,
Schilling & Click, P.C., on brief), for appellee.


A. Bruce Ericson (father) appeals from a judgment of the Henrico County Circuit Court

(trial court) (1) denying his petition for a reduction of child support; (2) determining that he owed

child support arrearages to Catherine Ericson (mother); and (3) ordering him to pay to mother

one-half of his oldest child's post-high school educational costs pursuant to the parties' property

settlement agreement (PSA).[1]  Father also asserts that the trial court erred by not specifically

including in its final order that he is entitled to the child dependency income tax exemption.  Both

parties requested attorney's fees and costs.  For the reasons that follow, we affirm in part, reverse in

part, and remand to the trial court for further proceedings consistent with this opinion.

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

[1] We note the trial court's order entered July 31, 2006, from which this appeal was taken, transposes the parties' respective designations in the text from that which appears in the caption. On remand, the trial court should correct the apparent clerical error in that order. See Code § 8.01-428(B).

## I. BACKGROUND

Under familiar principles, "we construe the evidence in the light most favorable to [mother], the prevailing party below granting to [her] evidence all reasonable inferences fairly deducible therefrom." Northcutt v. Northcutt, 39 Va. App. 192, 195, 571 S.E.2d 912, 914 (2002). So viewed, the evidence established that father and mother were divorced in March 1997. At that time, the court incorporated the parties' PSA into the final decree of divorce. That agreement established father's child support obligations for the parties' three children, "A" born on April 27, 1987, "B" born on March 6, 1990, and "C" born on February 28, 1992. The PSA contained language relating to the parties' desire to financially support their children in obtaining further education after high school.

In June 2005 father petitioned the Henrico County Juvenile and Domestic Relations District Court (district court) seeking a reduction in his child support payments as a result of his substantially reduced income. Thereafter, mother petitioned the court to compel father to pay his pro rata share of post-high school educational costs for A pursuant to the parties' PSA. The district court denied father's petition for reduction in child support, awarded wife a judgment in arrearages of child support payments, and found father in contempt for failure to pay his share of the post-high school educational costs of the parties' oldest child, A.

On appeal, father requested that the trial court terminate his child support obligation for A, who was eighteen years old and had graduated from high school; to reduce his total monthly child support payments for his two minor children, B and C, to $65 (the lowest presumptive amount under the child support guidelines in Code § 20-108.2); and to find that he was not obligated under the parties' PSA to pay mother a pro rata share of A's post-high school educational costs. Mother requested that the trial court find that father was voluntarily underemployed and impute $112,000 in annual income to him based on his past earnings. She argued that father's inability to pay child

support was due to his "neglect" in obtaining employment consistent with his prior proven earning capacity.

The trial court concluded that father was voluntarily underemployed and denied his motion to reduce his monthly child support payments to $65. Instead of finding father's income to be at his past earning level of $112,000 (as requested by mother), or at $34,200 (father's actual salary at the time of the trial proceedings), the trial court found that "[t]he evidence as a whole, including [father's] education, experience and past earnings, show[ed] that [father] could earn $75,000 per year in a sales or marketing position."

Using the $75,000 annual salary it imputed to father, and recognizing father's right to receive credit for his obligation to support his child from his current marriage (Code § 20-108(B)(1)) and for his tax obligations related to his self-employment (Code § 20-108(B)(12)), the trial court calculated father's total presumptive monthly child support obligation for both B and C to be $561. It then adjusted father's child support obligation upward in accordance with Code §§ 20-108.1(B)(2), 20-108.1(B)(9)-(10), citing father's failure to exercise visitation rights with his children, the standard of living for the children established during the parties' marriage, and father's greater earning capacity and ability to provide for the children. Based on these factors, the trial court determined father's total monthly child support for both B and C to be $661. It ordered father to pay mother $3,650[2] as his share of post-high school educational costs for A's first year of college and $4,017 for her second year of college. The trial court also ordered him to pay his one-half share of all future post-high school educational costs at the beginning of each school year. This appeal followed.

---

[2] Of that indebtedness, the trial court determined that father owed a balance of $586.32, after applying $1,943.50 it determined to be father's overpayment of child support, and $1,120.50 from the proceeds of his appeal bond.

## II.  ANALYSIS

### A.  Father's Child Support Obligation

#### 1.  Father's Voluntary Underemployment and Imputation of Income

Father contends that the trial court erred in finding that he was voluntarily underemployed and consequently imputing to him an annual income of $75,000.  He asserts that he experienced a material change in circumstances justifying a modification of his child support obligation when he was involuntarily terminated by Reebok International, Ltd. (Reebok).  He also asserts that he made reasonable and good faith efforts to secure new employment, and that the evidence did not support a finding that he was voluntarily underemployed as a tool salesman.

"A court may exercise the power granted by Code §§ 20-108 and 20-109 to modify a decree concerning child or spousal support if the party seeking the modification proves that 'a material change in circumstance ha[s] occurred since the last award or hearing to modify support.'"  Head v. Head, 24 Va. App.166, 173-74, 480 S.E.2d 780, 784 (1997) (quoting Hiner v. Hadeed, 15 Va. App. 575, 579, 425 S.E.2d 811, 814 (1993)).  "'[A] party seeking a reduction in support payments has additional burdens:  he must make a full and clear disclosure relating to his ability to pay. *He must also show that his lack of ability to pay is not due to his own voluntary act* or because of his neglect.'"  Hatloy v. Hatloy, 41 Va. App. 667, 672, 588 S.E.2d 389, 391 (2003) (emphasis in original) (quoting Edwards v. Lowry, 232 Va. 110, 112-13, 348 S.E.2d 259, 261 (1986)).  "Where the trial court's decision is based upon an *ore tenus* hearing, its determination will not be disturbed on appeal unless it is plainly wrong or without evidence in the record to support it."  Schoenwetter v. Schoenwetter, 8 Va. App. 601, 605, 383 S.E.2d 28, 30 (1989).

In considering the appropriate amount of child support to be paid, "a trial court . . . is required to impute income to a parent who is found to be voluntarily underemployed."  Niemiec

v. Dep't of Soc. Servs., 27 Va. App. 446, 451, 499 S.E.2d 576, 579 (1998) (citing Code § 20-108.1(B)(3)).  In deciding whether income should be imputed to a parent, and the amount of such imputed income, "the trial court must 'consider the [party's] earning capacity, financial resources, education and training, ability to secure such education and training, and other factors relevant to the equities of the parents and the children.'"  Blackburn v. Michael, 30 Va. App. 95, 102, 515 S.E.2d 780, 784 (1999) (quoting Niemiec, 27 Va. App. at 451, 499 S.E.2d at 579)).  The "court may [also] impute income based on evidence of recent past earnings."  Brody v. Brody, 16 Va. App. 647, 651, 432 S.E.2d 20, 22 (1993).

The record shows that father experienced the material change in circumstance necessary for the trial court to review his child support obligation to B and C.  While father's initial change in circumstances, his termination by Reebok, was involuntary, the record supports the trial court's finding that father's current reduced level of income was due to his "voluntary act" of leaving his field of expertise, shoe sales, and becoming self-employed as a tool salesman.  The record also shows that father has a college degree, significant sales experience and a proven record of success selling shoes.  As a senior salesperson for Reebok, father earned an annual income over $100,000 for the several years prior to his termination.  In 2005 he earned an annual income of $34,200 selling tools.  When father briefly returned to shoe sales in September 2005, his gross sales were much higher than his gross sales as a tool salesman.  However, complaining that the shoe company took too long to pay commissions on his sales, and desiring to build his tool selling business, father left his employment selling shoes and devoted all his efforts to selling tools.  However, selling tools only produced an annual income of $34,200, an amount well below his previous consistent annual income in excess of $100,000.  From the record before us, we conclude that the trial court did not err in finding that father was voluntarily underemployed.

Upon finding that father was voluntarily underemployed as a tool salesman, the trial court imputed income to him as it was required to do by law. Niemiec, 27 Va. App. at 451, 499 S.E.2d at 579. Considering father's education, training, experience, and proven capacity to earn more money, we cannot say that the trial court erred in imputing to father an annual salary of $75,000. Therefore, we affirm the decision of the trial court in finding that father was voluntarily underemployed and imputing to him an annual income of $75,000.

2. Statutory Requirements For Calculating Child Support

Father also contends that the trial court erred in using his imputed income ($75,000) rather than his actual gross income ($34,200) to calculate the presumptive amount of child support owed to B and C under the statutory child support guidelines (guidelines). See Code § 20-108.2. We agree.

Code § 20-108.1(B) provides that the amount of a parent's child support obligation is determined by use of the guidelines in Code § 20-108.2. See Princiotto v. Gorrell, 42 Va. App. 253, 258, 598 S.E.2d 626, 629 (2004). The amount of child support under the guidelines is based on the parents' gross (actual) income, Richardson v. Richardson, 12 Va. App. 18, 21, 401 S.E.2d 894, 896 (1991), and there is a rebuttable presumption that the amount listed in the guidelines is correct. Auman v. Auman, 21 Va. App 275, 277, 464 S.E.2d 154, 155 (1995) (citing Code § 20-108.1(B).

Code § 20-108.1(B) also provides a mechanism for the trial court to deviate from the child support guidelines by applying various statutory factors. Richardson, 12 Va. App. at 21, 401 S.E.2d at 896. Among those factors is "[i]mputed income to a party who is . . . voluntarily under-employed." Code § 20-108.1(B)(3). However, we have previously held that "[n]o additions or subtractions from the gross income . . . even if otherwise valid considerations, may be made *before* the [presumptive] figure is determined." Richardson, 12 Va. App. at 21, 401 S.E.2d at 896 (emphasis in original). "'*Once* the presumptive amount is determined, the trial court may deviate if such deviation is justified by factors recognized in Code § 20-108.1.'"

Auman, 21 Va. App at 277, 464 S.E.2d at 155 (emphasis added) (quoting Alexander v. Alexander, 12 Va. App. 691, 695, 406 S.E.2d 666, 668 (1991)).

In its letter opinion of May 9, 2006, the trial court stated that, "[t]he child support guidelines for the two children should be computed using the husband's monthly income of $6,250 [,]" or $75,000 annually, the amount of income imputed by it to father. Exhibit A introduced during the proceedings also reflects the imputed income rather than the actual gross income was used to determine the presumptive amount of child support.

Here, the trial court failed to calculate the presumptive amount of child support father owed under the guidelines based upon his gross income of $34,200. While the trial court explained in writing its rationale for imputing additional income to father, this "otherwise valid consideration[]" was made before the trial court expressly determined the amount of child support father owed based upon his actual income. Richardson, 12 Va. App. at 21, 401 S.E.2d at 896. Accordingly, we conclude that the trial court erred in determining the presumptive level of child support. We reverse the child support award for B and C and remand to the trial court to recalculate father's child support obligation consistent with this opinion and the statutory guidelines.

### B. Post-High School Education Provision in the PSA

Father asserts that the trial court erred in interpreting the post-high school education provision in the parties' PSA to legally obligate him to pay to mother a pro rata share of the funds she had paid for A's post-high school education costs. The contested portion of the PSA provides:

> The parties acknowledge that a legal duty of support for each
> [c]hild ends when that [c]hild reaches the age of 18 or, if that
> [c]hild is attending high school on a full time basis, until that
> [c]hild graduates from high school.

> \*     \*     \*     \*     \*     \*     \*

> Husband and [w]ife also agree *to supplement any funds that are available* to the [c]hildren for college *tuition*, up to four years, in an annual amount (per child) not to exceed the tuition cost for a student at the University of Virginia during the particular year. . . . The parties agree that [h]usband may have or will establish custodial accounts for the benefit of the [c]hildren and these funds shall be exhausted or, in [h]usband's discretion, [h]usband *may supplement*, from year to year, the available funds for the [c]hildren's post high school *tuition*.

(Emphasis added.)  Father contends that the parties' PSA did not create a contractual obligation requiring him to pay for the children's post-high school educational costs because "neither parent was taking on a specific burden of a certain portion of that [post-high school educational] expense for himself or herself personally . . . ."  He contends that the trial court was without authority to create specific contractual obligations for the parties to pay their children's post-high school educational costs where none existed in the parties' PSA.  Because we conclude that the language of the PSA as to payment of education costs is vague and uncertain, we conclude that the trial court erred in ordering father to pay a pro rata share of the funds mother expended for A's college costs.

Absent a binding agreement to do so, no parent, whether married or divorced, is legally obligated to pay for an adult child to obtain additional education post-high school.  Jones v. Jones, 19 Va. App. 265, 270, 450 S.E.2d 762, 764 (1994).  When parties divorce, they may contractually establish obligations between themselves to pay post-high school educational costs for their children.  See, e.g., Douglas v. Hammett, 28 Va. App. 517, 521, 507 S.E.2d 98, 100 (1998); Jones, 19 Va. App. at 266, 450 S.E.2d at 762; Tiffany v. Tiffany, 1 Va. App. 11, 13, 332 S.E.2d 796, 798 (1985).  "In construing the terms of a property settlement agreement, just as in construing the terms of any contract, we are not bound by the trial court's conclusions as to the construction of disputed provisions."  Smith v. Smith, 3 Va. App. 510, 513, 351 S.E.2d 593, 595 (1986).  PSAs "must be construed as written, without adding terms that were not included by the

parties . . . ." Parikh v. Family Care Center, Inc., 273 Va. 284, 288, 641 S.E.2d 98, 100 (2007).

"Thus, where parents seek to include such an obligation in [a] . . . [PSA], the plain and

unambiguous terms of their contract establish the rights and obligations of the parties." Jones,

19 Va. App. at 270, 450 S.E.2d at 764. Although courts disfavor declaring contracts, or portions

of contracts, void for vagueness and uncertainty, they must do so absent "mutual assent of the

contracting parties to *terms reasonably certain* under the circumstances . . . ." Allen v. Aetna

Casualty & Surety, 222 Va. 361, 364, 281 S.E.2d 818, 820 (1981) (emphasis added).

Here, the language the parties used in the post-high school education provision of the

PSA fails to impose a specific, quantifiable obligation on either parent to terms reasonably

certain under the PSA. We cannot ascertain the meaning of the word "supplement" as the term is

used in the PSA. The definition of the word "supplement" is "to fill up or supply by additions;

add something to; fill the deficiencies of." Webster's New International Dictionary 2297 (3d ed.

2002). "Fill the deficiencies of" is different from "add to." "Fill the deficiencies of" presumes

that the parties agreed to pay the entire difference between other funds available for tuition and

the actual cost of tuition, subject to the specified cap of tuition costs at the University of

Virginia. "Add to" requires the parties to provide some financial support without obligating

themselves to assume responsibility for the entire difference between the funds "available" for

tuition and actual cost of tuition (subject to the cap of tuition costs at UVA).

Moreover, we are unable to determine whether the phrase "any funds that are

available . . . for college tuition" was intended to include committed tuition funds that do not

require repayment (*e.g.* grants and scholarships); tuition funds that require repayment (*e.g.*

loans); tuition assistance funds that require the student to satisfy some type of work component

for the educational institution attended; or tuition assistance that requires the student, following

graduation, to engage in designated employment for an established period of time in lieu of

payment of tuition. Likewise, it is unclear whether the parties intended "available" to mean those the student actually obtained or those merely obtainable.

Accordingly, we find that the material terms in the post-high school education provision of the parties' PSA are not "reasonably certain," and, therefore, unenforceable as a contractual obligation. See Flowers Baking Co. of Lynchburg, Inc. v. R-P Packaging, Inc., 229 Va. 370, 376, 329 S.E.2d 462, 466 (1985) (finding when material terms are uncertain, contract is unenforceable as a matter of law). Therefore, we conclude that the trial court erred in ruling that, under the terms of the parties' PSA, father was contractually required to pay mother a pro rata share of her payments for A's post-high school educational costs.

### C. Child Dependency Income Tax Exemption

Father also contends that the trial court erred by not specifically including in its final order a provision affirming that he is entitled to retain the child dependency income tax exemption provided for him in the PSA. Paragraph 8(B) of the PSA states, "[f]or so long as [h]usband is current in his monthly support payments, he shall be entitled to claim two of the [c]hildren as a dependency exemption for all calendar years hereafter until he has no longer met the requirements of such exemption."

The PSA was incorporated by reference in the final decree of divorce. However, father cites no authority for his argument that the failure of the trial court to include a provision in the order concerning his current entitlement was error. By failing to cite any authority in support of his argument in his opening brief, father has violated Rule 5A:20(c). "[S]tatements unsupported by argument, authority or citations to the record do not merit appellate consideration." Buchanan v. Buchanan, 14 Va. App. 53, 56, 415 S.E.2d 237, 239 (1992). Thus, we will not consider this issue on appeal.

### D. Attorney's Fees and Costs

Both parties seek attorney's fees and costs on appeal.

> The rationale for the appellate court being the proper forum to
> determine the propriety of an award of attorney's fees for efforts

> expended on appeal is clear. The appellate court has the
> opportunity to view the record in its entirety and determine
> whether the appeal is frivolous or whether other reasons exist for
> requiring additional payment.

McGinniss v. McGinniss, 49 Va. App. 180, 190-191, 638 S.E.2d 697, 702 (2006) (quoting O'Loughlin v. O'Loughlin, 23 Va. App. 690, 695, 479 S.E.2d 98, 100 (1996)). On consideration of the record before us, we hold that neither party is entitled to an award of attorney's fees and costs incurred on appeal. "[W]e find the litigation addressed appropriate and substantial issues . . . ." Estate of Hackler v . Hackler, 44 Va. App. 51, 75, 602 S.E.2d 426, 438 (2004). Therefore, each party's request for an award of fees and costs on appeal is denied.

### III. CONCLUSION

From the record before us, we conclude that the trial court did not err in finding father voluntarily underemployed and in imputing income of $75,000 to him, or in its reasons for determining that circumstances required a departure from the child support obligation required by the guidelines. Accordingly we affirm its judgment in those matters. However, we conclude that it erred in determining father's presumptive child support obligation by calculating that amount using father's imputed income rather than his actual gross income. Accordingly, we reverse and remand to the trial court to recalculate father's support obligation.

We also conclude that the material terms of the provision of the parties' PSA relating to payment for their children's education following high school to be vague and unenforceable as a matter of law. Accordingly, we hold that the trial court erred in ordering father to pay mother a pro rata share of the post-high school educational costs which mother has paid for A. We decline to consider father's contention that the trial court erred in failing to make an "express finding" in its final order that he is entitled to retain the child dependency income tax exemption because this argument is barred by Rule 5A:20. Finally, we decline to award attorney's fees and costs to either party.

For these reasons, we affirm in part and reverse in part, and remand to the trial court for further proceedings consistent with this opinion.

<u>Affirmed in part, reversed in part and remanded.</u>