FLOWERS BAKING CO. OF LYNCHBURG,
INCORPORATED, ET AL.

V.

R-P PACKAGING, INCORPORATED, ET AL.

Record No. 820545

Decided April 26, 1985, at Richmond

Present: All the Justices

*Robert C. Wood, III (Edmunds, Williams, Robertson, Sackett, Baldwin & Graves*, on briefs), for appellants.
*Norman A. Kinnier; Killis T. Howard (Martin, Taylor, Fralin, Freeman & Perrow*, on briefs), for appellees.

RUSSELL, J., delivered the opinion of the Court.

This appeal turns on questions concerning the formation of contracts under the Uniform Commercial Code (Code §§ 8.2-204 and 8.2-305) and subsidiary questions concerning the Statute of Frauds (Code § 8.2-201(3)(a)) and the burden of proving nonconformity of goods to a contract (Code § 8.2-607(4)).

Kern's Bakery of Virginia, Inc. (Kern's) operated a bakery in Lynchburg in 1977. R-P Packaging, Incorporated (R-P), of Columbus, Ga., was a manufacturer of cellophane wrapping material which was used by Kern's in packaging its product. In later 1977, Kern's decided to change its system for the packaging of cookies produced in the Lynchburg plant from a tied bread bag to a tray covered with printed cellophane wrapping. Kern's plant manager discussed the proposed change with R-P's representative and furnished R-P with several trays filled with cookies to enable R-P to take measurements to determine the appropriate size for the cellophane covering. In addition, R-P was requested to design appropriate "artwork" to be printed on the cellophane wrapping.

On December 28, 1977, Kern's plant manager gave R-P's representative a verbal "order" for cellophane wrap, which was transmitted to R-P's home office. On January 4, 1978, R-P prepared and mailed to Kern's a written acknowledgement of the "order," which contained specifications, delivery instructions, order date,

and quantity. The word "Later" was typed in the space provided for the contract price. The sale price, $13,375.11, was filled in subsequently, on a date not shown by the evidence. The symbol "W/A" was written in the space titled "Acknowledgement Date." At the bottom of the acknowledgement form was typed: "Produce printing plates per artwork sent to Frank Tarpley, but first send photostats with color stripe to customers for approval before etching."

R-P's representative testified that "W/A" stood for "will advise," which, in company parlance, meant that R-P did not have approval from the customer to proceed. He also testified that the etchings were "new artwork being done from scratch" and that the acknowledgement "indicates that we are not to proceed with the etching until we've had approval from the customer." He added, "We had the orders, but the customer had not either approved the final design or size, or something, so the order was simply entered and nothing was happening to it until such time as they gave us approval." R-P's president testified, "Until we got an approval from the customer, we could not print it; they would not do anything until they were notified by the Sales Department that the customer had approved it."

On January 3, 1978, the day before R-P's acknowledgement form was issued, without notice to R-P, Kern's sold all its assets in Lynchburg to Flowers Baking Company of Lynchburg, Inc. (Flowers). The written agreement between the two baking companies, dated January 3, 1978, provided that Flowers would not assume all of the liabilities of Kern's, but Kern's represented that all pending contracts involving more than $5,000, to which it was a party, were listed in the agreement, and that Kern's would indemnify Flowers from all liability arising from any misrepresentation or breach of warranty. The order for cellophane from R-P was not listed. R-P's acknowledgement, of course, arrived at the Lynchburg plant after Flowers had assumed control and was never received by Kern's.

R-P sent a sample unprinted roll of the cellophane wrapping to the Lynchburg plant to be run on the plant's packaging equipment as a test for size. Although no such test was performed, the plant manager, who had worked under Kern's but was still operating the plant for Flowers, advised R-P's representative in mid-February that the material was satisfactory, and said, "Proceed with the order." On the following day, R-P's representatives met with

Flowers' manager at the Lynchburg plant to discuss the proposed "artwork." Flowers' manager approved it, except for an agreed change of name from Kern's to Flowers, and requested that the material be produced and shipped as soon as possible.

Flowers received the printed wrapping material about March 27, 1978. Flowers' manager testified that he telephoned R-P's representative about ten days later, stating that the material was too short to fit the trays and that the printing was not centered. R-P's representative testified that he was unaware of any complaint about the material until mid-June. He also testified that the material conformed exactly to the order as placed by Flowers. Flowers returned the material to R-P by overnight express on July 27, 1978, without obtaining R-P's consent. The acknowledgement form contained a provision stating: "Buyer waives all claims relating to goods unless received in writing by Seller within thirty (30) days of receipt of the goods. No goods shall be returned by Buyer for any reason without Seller's written approval."

R-P brought this action against Kern's and Flowers for $13,375.11, as the purchase price of the packaging material. Flowers also cross-claimed against Kern's for indemnity under the terms of the January 3, 1978 agreement. At a pretrial conference, the court ruled as a matter of law that there was no contract between R-P and Kern's. Kern's was accordingly dismissed as to R-P's claim and as to Flowers' cross-claim. R-P's claim against Flowers went to jury trial. Flowers conceded that it was indebted to R-P for a $3,933 reorder of the packaging material. The jury returned a verdict in R-P's favor against Flowers for the remaining balance of $9,642.11.

On appeal, Flowers contends that the court erred in ruling, as a matter of law, that no contract existed between R-P and Kern's, thus depriving Flowers of its right to indemnification against Kern's for misrepresentation concerning contracts listed in the January 3, 1978 agreement. Flowers also argues that R-P's claim against it is barred by the statute of frauds contained in the U.C.C. and that the court erred in instructing the jury that Flowers had the burden of proving that the goods failed to conform to the contract. We find no reversible error in the rulings below.

In support of its contention that a contract existed between R-P and Kern's, Flowers relies on Code § 8.2-204 which provides that a contract for the sale of goods may be made in any manner sufficient to show agreement, including conduct by the parties recog-

nizing the existence of a contract, and that such a contract will not fail for indefiniteness even though one or more terms are left open, provided the parties have intended to form a contract and there is a reasonably certain basis for giving an appropriate remedy. Flowers further relies on Code § 8.2-305, which provides that parties can conclude a contract for sale even if the price is not settled, provided that they so intend. In such a case, the price is a reasonable price at the time of delivery.

Flowers argues that because of these provisions, the contract between R-P and Kern's was made when the verbal "order" of December 28, 1977 was given by Kern's; that it was evidenced by the subsequent internal activities of R-P, including issuance of its written acknowledgement; and that the failure of the parties to agree on price and the "artwork" design, before Kern's was replaced as a contracting party by Flowers, is not fatal to the existence of the contract.

While it is true that the U.C.C. has greatly modified the rigors of the common-law rules governing the formation of contracts, it remains a prerequisite that the parties' words and conduct must manifest an intention to be bound. Although they may make a contract which deliberately leaves material terms open for future determination, no contract results where their words and conduct demonstrate a lack of intention to contract. *Kleinschmidt Div. of SCM Corp.* v. *Futuronics*, 41 N.Y.2d 972, 395 N.Y.S.2d 151, 363 N.E.2d 701 (Fuchsberg, J., concurring) (1977). Such a lack is not remedied by evidence of custom and usage in the trade, *White Lbr. Sales, Inc.* v. *C. Brinson Lamb & Sons Lbr. Co.,* 121 Ga. App. 702, 175 S.E.2d 81 (1970), or by a written memorandum purporting to confirm oral discussions which did not in themselves amount to an agreement, *D. R. Curtis Co.* v. *Mason.* 649 P.2d 1232 (Idaho App. 1982).

Here, the words and conduct of R-P and Kern's were entirely tentative and were inconsistent with an intention to contract at all times prior to January 3, 1978, when Kern's was replaced by Flowers. Throughout this period, Kern's was awaiting R-P's proposal, which was to be based upon R-P's measurements of the cookie trays which Kern's had sent. Kern's was also awaiting R-P's design of the "artwork," which was to be submitted for Kern's approval. R-P, on its part, until after Kern's had left the scene, made no proposal, submitted no "artwork" for approval, sent no cellophane for testing, and quoted no price. When it issued

its proposal of January 4, 1978, it took no steps to fill the "order" and denied any intention to do so, until its customer had approved the "artwork" design.

▪ The subject matter of the purported contract between R-P and Kern's is so uncertain that such a contract would be unenforceable as a matter of law. Kern's sought to purchase new, printed cellophane wrapping, containing "artwork" designed "from scratch," subject to the buyer's approval. Although the acknowledgement issued by R-P contained specifications as to size and color, they contained no description of the "artwork" to be printed on the cellophane, furnished no criteria by which certainty or identification could be ascertained objectively, and did not entrust the design to the sole discretion of either contracting party, or to some third person designated as an agreed authority. The design was to be generated in the future by R-P and submitted to Kern's for approval. No subject matter would exist sufficient to enable the court to provide a remedy for breach until both of these contemplated actions had been successfully completed.

▪ Flowers' reliance on Code § 8.2-305 is similarly misplaced. That provision authorizes the court to fill in a gap which the parties have intentionally left open with respect to sale price, but, by its own terms, it applies only where the parties intended to conclude a contract. J. White and R. Summers, Uniform Commercial Code, § 3-7, at 99 (1972). Here, for the reasons stated, the court correctly determined as a matter of law that they did not so intend.

▪ Because no contract existed between R-P and Kern's, Flowers had no cause of action against Kern's for indemnification against loss arising from misrepresentation or breach of warranty concerning outstanding contracts undisclosed in the January 3, 1978 agreement.

▪ Flowers further contends on appeal that because it had no written contract with R-P, R-P's claim against Flowers is barred by the statute of frauds contained in Code § 8.2-201(1), which renders contracts for the sale of goods for a price of $500 or more unenforceable unless evidenced by writing signed by the party against whom enforcement is sought. The answer to this contention is furnished by Code § 8.2-201(3)(a), which provides that such contracts are enforceable, even when not evidenced by a writing, if the goods are to be specially manufactured for the buyer, are not suitable for sale to others in the ordinary course of

the seller's business, and the seller has made a substantial beginning of their manufacture. The cellophane wrapping material was manufactured to the size required by Flowers' containers, was imprinted with Flowers' name and unique "artwork," and was completely produced by the seller. Code § 8.2-201(3)(a) therefore takes R-P's claim against Flowers out of the statute of frauds.

Flowers finally contends that in the jury trial on R-P's claim against Flowers, the court erred in granting Instruction 1, which told the jury that Flowers had the burden of proving that the goods failed to conform to the contract. Flowers argues that R-P's action for the purchase price was brought under Code § 8.2-709(1)(a), which expressly conditions the seller's right of recovery upon the buyer's acceptance of the goods. Rather than making an acceptance under Code § 8.2-606, Flowers says that it rightfully rejected the goods under Code § 8.2-602. In those circumstances, the argument runs, the burden is on the seller to prove that the goods conformed to the contract.

"Acceptance" is a term of art under the Uniform Commercial Code. Code § 8.2-606(1)(b) provides that acceptance occurs when the buyer, having had a reasonable opportunity to inspect the goods, fails to make an *effective* rejection. In order to be effective, notice of the rejection must be given to the seller within a reasonable time. Code § 8.2-602(1), official comment 1. The issue whether notice of rejection was given within a reasonable time under the circumstances is ordinarily one of fact for the jury and was properly submitted to the jury in this case. If notice of rejection was given unreasonably late, the rejection is not "effective," acceptance is implied by Code § 8.2-606(1)(b), and the burden of proof is on the buyer, pursuant to Code § 8.2-607(4), to establish any nonconformity of the goods to the contract. The foregoing rules are provided by the U.C.C. to cover cases in which the goods are alleged to be nonconforming. If the goods in fact conform to the contract, the buyer has a positive duty to accept them, and his failure to do so constitutes a "wrongful rejection" which gives the seller immediate remedies for breach. Code § 8.2-602(3), official comment 3.

Here, both issues of fact were properly submitted for the jury's determination: whether reasonable notice of rejection was given by Flowers to R-P, and whether the cellophane wrap in fact failed to conform to the specifications agreed upon by the parties. Upon principles too familiar to require citation, the jury's resolu-

tion of the conflicting evidence upon these subjects, embodied in a final judgment on the verdict, is conclusive on appeal.

As an abstract principle, if the goods failed to conform, and if timely notice of rejection had been given to the seller, the rejection would have been both "rightful" and "effective." There would, therefore, have been no acceptance; Code § 8.2-607(4) would have been inapplicable; and the burden would have remained upon the plaintiff seller, as at common law, to prove that it had performed the contract by producing and delivering conforming goods. In those circumstances, Instruction 1 would be erroneous. *Miron* v. *Yonkers Raceway, Inc.,* 400 F.2d 112, 119 (2d Cir. 1968).

Flowers has waived its right to complain of error in Instruction 1 by submitting Instruction 1B, which was granted by the court. 1B told the jury that it should find for Flowers if it found from a preponderance of the evidence, (1) that the goods were nonconforming, and (2) that the goods were "rightfully rejected" by Flowers. 1B was the mirror image of 1, and was entirely consistent with it. It relied on the same theory. Obviously, someone must carry the burden of proving rightful rejection if the jury is to find it by a preponderance of the evidence. Yet, it is a proposition advanced only by Flowers. The implication is clear that Flowers' tendered instruction contemplates that Flowers must carry the burden of showing rightful rejection. To show that its rejection was rightful, it must show the goods failed to conform.

Further, the error in Instruction 1 was harmless under the facts of the case. One of the principal factual issues at trial was whether the prospective buyer, either Kern's or Flowers, had arbitrarily changed the size of the trays without notice to R-P, after giving R-P trays of the original dimensions as a basis for calculating the size of the cellophane wrap. R-P's representative testified that such a change had been made; a witness for Flowers said that Flowers had not done so. The jury resolved this dispute, if it was one, in R-P's favor. R-P's evidence that it had produced the wrap in strict conformity to the agreed specifications was unrefuted. If the tray size were changed, it would affect both the fit of the wrap and the centering of the "artwork." The jury also necessarily accepted R-P's evidence that it had submitted a plain roll of the wrap for Flowers to run on its machinery as a test for size, that such a test would have revealed any nonconformity as to size, that Flowers had failed to make any such test, but had approved both

the sample and the "artwork;" and had directed R-P to produce the goods and deliver them as soon as possible. In this factual context, there was no evidence to support Flowers' theory that it had rightfully rejected the goods, the only circumstance which would have cast the burden of proof of conformity upon R-P.

For the foregoing reasons, the judgment will be

*Affirmed.*