**In re BTS, INC., Debtor.**

**Bankruptcy No. 86–02498–2–11.**

United States Bankruptcy Court,
W.D. Missouri.

Sept. 11, 1989.

Joel Pelofsky, Thomas Stoll, Shughart, Thomson & Kilroy, Kansas City, Mo., for Kansas Communication, Inc.

Joel Laner, Swartzman, Thomas, Hazelton, Laner & Batson, Kansas City, Mo. for Martin Somervold.

Thomas M. Mullinix, Evans & Mullinix, Kansas City, Kan., for debtor.

## MEMORANDUM OPINION AND ORDER

FRANK W. KOGER, Bankruptcy Judge.

This matter comes before the Court in the form of a response to an order to show cause. On February 6, 1989, Kansas Communications, Inc., ("KCI") filed its Motion For Order To Show Cause For An Accounting and For Turnover ("Motion") moving the Court to issue its order against the former employees of BTS, Inc. ("Debtor") located in San Jose, California. KCI alleged that it had purchased assets of the Debtor located in San Jose pursuant to Order of this court, but that Debtor's former employees in San Jose had refused to deliver the assets located there (the "San Jose Assets"). The Court issued the show cause order on February 6, 1989. On February 17, 1989, a written response to the show cause order was filed by Mr. Martin Somervold ("Somervold"), who represented that a contract for the sale of the San Jose Assets had been made with KCI. A hearing on the matter was convened on August 7, 1989, at which KCI and Somervold appeared, testimony was given, documents admitted, and arguments presented. Subsequent to the conclusion of the hearing, counsel for KCI and Somervold submitted their respective written arguments in the form of correspondence to the Court. After considering the testimony, the documents admitted into evidence, and the argument of counsel, the Court makes the following findings of fact and conclusions of law.

### FINDINGS OF FACT

Debtor filed its Chapter 11 proceeding in 1986. On October 14, 1988, the Court approved the sale of certain assets of Debtor to KCI, a Missouri corporation which conducts its business in Kansas. Included in the assets sold to KCI were the San Jose Assets.

Somervold was a former employee of Debtor who had directed the Debtor's business affairs in San Jose. Somervold discussed the purchase of the San Jose Assets

with Mr. Herbert Sizemore ("Sizemore"), president of KCI. These discussions led to an agreement between KCI and Somervold, as both testified that each believed that they had reached an agreement for the sale of the San Jose Assets to Somervold.

On November 2, 1988, Sizemore, in his capacity as president of KCI, sent a letter to Somervold regarding the sale of the San Jose Assets. This letter reflected the price of $1.00 for fixed assets, but does not contain a price term for inventory. Prior to that date, on October 27, 1988, Sizemore sent a letter to his attorney detailing "the pertinent information regarding the sale of assets of the San Jose California office of B.T.S." Included in this letter was a provision that KCI considered the purchase price of the inventory to be based upon Debtor's book value. On January 4, 1989, counsel for KCI sent a proposed Asset Purchase Agreement, among other proposed closing documents, to Somervold. This agreement contained a provision that the parties would agree upon a book value of the assets at the closing of the Asset Purchase Agreement. Somervold testified that he had knowledge of the Debtor's books and felt that inventory price based upon Debtor's book value was too high and did not reflect the true value of the inventory. Furthermore, Somervold testified that the purchase price for inventory was never established. In summary, KCI and Somervold never agreed upon a purchase price for the inventory.

## CONCLUSIONS OF LAW AND OPINION

Neither party has contested the issue of whether the matter before the Court is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). This does not relieve the Court from its obligation to determine this issue under 28 U.S.C. § 157(b)(3). The relief that KCI seeks is essentially the delivery of the San Jose Assets or an order of contempt. Somervold alleges that a contract exists with KCI. The Debtor is neither movant nor respondent in this matter. It appears to the Court that the issue of whether this matter is a core proceeding depends upon the determination of whether an enforce-

able contract does in fact exist between KCI and Somervold. If a contract between KCI and Somervold *does not* exist, the relief requested by KCI would be encompassed under 28 U.S.C. § 157(b)(2)(B) and (b)(2)(N) in furtherance of this Court's order approving the sale of assets of the Debtor to KCI. However, if a contract *does* exist as alleged by Somervold, the dispute between KCI and Somervold does not involve the Debtor, claims against the Debtor, property of the estate or any other matter that is otherwise related to Debtor's case. Thus, if a contract does exist between KCI and Somervold, their dispute would not even rise to the level for which the Court could issue recommendations pursuant to 28 U.S.C. § 157(c).

In determining the nature of a proceeding for purposes of determining core status, the Court shall look to both the form and substance of the proceeding. *In re Wood*, 825 F.2d 90 (5th Cir.1987). For the reasons stated below, the Court concludes that an enforceable contract does not exist between the parties; accordingly, the dispute is a core proceeding, and the Court may issue the appropriate order and judgment pursuant to 28 U.S.C. § 157(b).

The parties have apparently acquiesced in the application of Kansas law to this matter. Kansas Statutes Annotated ("K.S. A.") § 84-1-105 allows the Court to apply Kansas law to the transaction at issue if the transaction bears a reasonable relation to Kansas. The Court concludes that the transaction in dispute does bear a reasonable relation to Kansas· in that KCI conducts it business there. Therefore, because neither party has raised the issue and based upon the relation of the transaction to the state, the Court will apply the law of Kansas.

As stated above, KCI seeks delivery of the San Jose Assets or an order of contempt, which Somervold defends by alleging that a contract for the sale of the San Jose Assets exists. K.S.A. § 84-2-201(1) states:

Except as otherwise provided in this subsection a contract for the sale of goods

for the price of $500 or more is not enforceable by way of action or defense unless there is some writing sufficient to indicate that a contract for sale has been made between the parties and signed by the party against whom the enforcement is being sought or by his authorized agent or broker. A writing is not insufficient because it omits or incorrectly states a term agreed upon but the contract is not enforceable under this paragraph beyond the quantity of goods shown in such writing.

Section 84–2–201, the Kansas version of the Uniform Commercial Code ("UCC") Statute of Frauds, requires a preliminary step in determining whether a contract[1] for the sale of goods[2] is enforceable between the parties—the production of a signed writing which is sufficient to indicate that a contract was made and which contains a quantity term. *Southwest Engineering v. Martin Tractor*, 205 Kan. 684, 473 P.2d 18, 23 (1970); White & Summers, *The Uniform Commercial Code*, § 2–4, p. 80 (3rd Ed.1988) (hereinafter cited as *White & Summers*). The failure to produce a writing under Section 84–2–201 renders the alleged contract unenforceable, unless a limited number of exceptions apply.[3] If a writing does exist, however, it does not necessarily follow that the contract is enforceable. *White & Summers*, § 2–3, p. 78. Rather, the Court is required to take a second step in order to determine whether the alleged contract actually exists and the terms of the contract. The Court may look at the writing that satisfies Section 84–2–201 and beyond to determine the terms of the alleged oral contract. *Southwest Engi-*

*neering,* 473 P.2d at 22; *White & Summers*, § 2–4, p. 82–83.

In the matter at hand, the Court finds that sufficient writings exist to indicate the contract between Somervold and KCI may exist as alleged by Somervold. First, KCI sent the November 2 letter to Somervold discussing the terms that KCI was willing to sell to Somervold. Prior to that date, on October 27, KCI sent to its attorney a detailed letter stating the terms of the deal, which shows that KCI considered that an agreement had been reached. In addition, KCI directed its counsel to prepare documentation reflecting the terms of the contract. This October 27 letter shows that KCI, the party against whom Somervold seeks to enforce the contract, considered itself to be in agreement with Somervold. Finally, the January 4 letter from KCI's counsel to Somervold states that it was counsel's understanding that an agreement had been reached. Indeed, it is very unlikely that KCI would have its counsel prepare documents and forward them to Somervold if it did not consider that an agreement had been reached. Section 84–2–201 allows the Court to consider a writing from KCI or its authorized agent; clearly, KCI's counsel was its authorized agent in the preparation of the sales documents. Thus, signed writings do exist in this matter that preliminarily indicate that there was a contract as alleged by Somervold.

These writings also contain a quantity term. The November 2 and October 27 letters contemplate the sale of inventory that existed as of a certain date. The quantity requirement of Section 84–2–201 does not require a numerical quantity, but rather an identifiable quantity. *White &*

1. K.S.A. § 84–1–201(11) defines a contract as: "... the total legal obligation which results from the parties' agreement as affected by this act and any other applicable rules of law." K.S.A. § 84–1–201(3) defines an agreement as: "... the bargain of the parties in fact as found in their language or by implication from other circumstances including the course of dealing or usage of trade or course of performance as provided in this act ... Whether an agreement has legal consequences is determined by the provisions of this act, if applicable; otherwise by the law of contracts ..."

2. K.S.A. § 84–2–105(1) defines goods as:

"... all things ... which are movable at the time of identification to the contract for sale other than the money for which the price is to be paid, investment securities (article 8) and things in action...."
Both parties also conclude that the alleged contract is one for the sale of goods to which the UCC applies. The Court has no reason to disagree with this conclusion.

3. *White & Summers*, §§ 2–5 and 2–6, pp. 86–97. The Court need not apply these exceptions to the present matter.

*Summers,* § 2–4, p. 81, n. 10. In the matter at hand, the writings show that KCI had agreed to sell all inventory purchased from Debtor to Somervold. This language is sufficient to satisfy the quantity requirement of Section 84–2–201.

Therefore, the Court concludes that the Kansas version of the UCC Statute of Frauds has been satisfied by the existence of numerous signed writings that, in their entirety, sufficiently indicate that a contract for the sale of a quantity of goods may have been made. Accordingly, the preliminary step under Section 84–2–201 is satisfied in that the alleged contract between KCI and Somervold is not rendered unenforceable.

Somervold still must carry the burden of proof, which may encompass proof beyond the writings, of showing that the parties did in fact make an enforceable contract and the terms thereof. *White & Summers,* § 2–3, p. 78; *American Bronze v. Streamway,* 37 UCC Rep. 687, 692, 8 Ohio App.3d 223, 456 N.E.2d 1295 (1982); *Perdue Farms v. Motts,* 459 F.Supp. 7, 23 (D.Miss.1978). The Court concludes that Somervold has not carried this burden of proof.

K.S.A. § 84–2–305(1) [4] allows parties, if they so intend, to agree to a contract even though a price term is not fixed. K.S.A. § 84–2–305(4) [5] provides that there is no contract when the parties intend to agree upon a price but have failed to do so. Under each of these sections, intent is the crucial factor. In the present matter, it is clear that each side intended to agree upon a price but that they failed to do so. Negotiations regarding price were continuing throughout the entire time period that the parties discussed the sale of assets. KCI believed that an agreement was reached on a price based upon Debtor's book value; Somervold did not agree to this term as he thought it was too high. Thereafter, the parties exchanged various counteroffers regarding price. Although the evidence shows that both parties agreed that *payment* could be made as Somervold sold inventory, there was no evidence that the parties either agreed to leave the price term open or that they agreed upon a price.

Clearly, KCI and Somervold intended to reach an agreement regarding price, but failed to do so. Indeed, Somervold testified that he did not believe that an agreement was reached regarding purchase price of inventory. The course of conduct between the parties show that negotiations regarding price continued after the November 2 and October 27 letters. Therefore, the Court concludes that the parties failed to make a contract because of the failure to agree upon a price. *White & Summers,* § 3–7, p. 156; *Flowers Baking Co. v. R–P Packaging,* 40 UCC Rep. 1631, 1637, 229 Va. 370, 329 S.E.2d 462 (1985). Somervold thus failed in meeting his burden of proof that the parties completed an oral contract; accordingly, the purported contract is unenforceable.

K.S.A. § 84–2–204(3) [6] does not provide assistance to Somervold in meeting his burden of proof. Like Section 84–2–305, intent is a key factor under Section 84–2–204(3) in that it provides assistance only if the parties intended a term to remain indefinite. Although there are no reported cases in Kansas under this section, the Official Kansas Code Comment to Section 84–2–204(3) shows that latitude is given only where the parties actually intended to have a contract. In the matter at hand, there is insufficient proof that the parties actually in-

---

**4.** K.S.A. § 84–2–305(1):
"The parties *if they so intend* can conclude a contract for sale even though the price is not settled." (emphasis added).

**5.** K.S.A. § 84–2–305(4):
"Where, however, the parties *intend* not to be bound unless the price be fixed or agreed and it is not fixed or agreed there is no contract. In such a case the buyer must return any goods already received or if unable to do so must pay their reasonable value at the time of delivery and the seller must return any portion of the price paid on account." (emphasis added).

**6.** K.S.A. § 84–2–204(3):
"Even though one or more terms are left open a contract for sale does not fail for indefiniteness if the parties have intended to make a contract and there is a reasonably certain basis for giving an appropriate remedy."

tended to have a contract in the absence of a price agreement.

In summary, Somervold has failed to show cause in response to the Court's Order. Section 84-2-305(4) also provides a remedy to KCI in the present matter. Somervold is required to turn over the San Jose Assets to KCI and to pay a reasonable value for those assets that he is unable to return. No evidence was presented to the Court on this issue. Therefore, the Court hereby determines that the reasonable value that Somervold must pay to KCI for assets that cannot be returned is the total value [7] that Somervold received from the sale, transfer, or other disposition of those assets.

WHEREFORE, IT IS HEREBY ORDERED THAT on or before September 25, 1989, Mr. Martin Somervold, his employees, agents, or assigns, shall deliver possession of the San Jose Assets to KCI; it is further

ORDERED that on or before September 30, 1989, Mr. Martin Somervold, his employees, agents, or assigns shall prepare and deliver to KCI an accounting of all of the San Jose Assets in their possession as of October 14, 1988, and of all sales, transfers, or other dispositions of the San Jose Assets from and after October 14, 1988; it is further

ORDERED that on or before September 30, 1989, Mr. Martin Somervold, his employees, agents, or assigns shall pay over to KCI cash proceeds equal to the total value of the San Jose Assets that have been sold, transferred or otherwise disposed from and after October 14, 1988; and it is further

ORDERED that the failure of Mr. Martin Somervold, his employees, agents, or assigns to comply with these orders within the stated time periods shall result in the issuance of contempt citations without further hearing before this Court.

---

7. This term shall mean the total cash proceeds from sales plus value received from the non-cash transfer of the San Jose Assets.