PRESENT: Hassell, C.J., Keenan, Koontz, Lemons, and Goodwyn, JJ., and Stephenson and Russell, S.JJ.

DELTA STAR, INC.

OPINION BY
v.  Record No. 071674  SENIOR JUSTICE ROSCOE B.STEPHENSON, JR.
September 12, 2008
MICHAEL'S CARPET WORLD

FROM THE CIRCUIT COURT OF THE CITY OF LYNCHBURG
J. Leyburn Mosby, Jr., Judge

In this case governed by the Uniform Commercial Code – Sales, Code §§ 8.2-101 et seq. (the UCC), we determine whether the trial court erred in failing to apply the UCC's Statute of Frauds, Code § 8.2-201, to declare unenforceable a purported oral contract for the sale of goods.

I

Michael's Carpet World (Michael's) sued Delta Star, Inc. (Delta Star), seeking to recover the unpaid balance Michael's claimed was due on an alleged contract for the purchase and installation of flooring in offices of Delta Star.  Delta Star responded that it had paid Michael's for the purchase and installation of flooring in its entryway and denied that there was a contract for the purchase and installation of flooring in two of its offices.  Delta Star also filed a plea in bar contending that the alleged contract was not in writing as required by the Statute of Frauds and, therefore, was unenforceable.

The trial court heard the parties' evidence, found that Delta Star had breached the contract with Michael's, and entered judgment in favor of Michael's in the principal amount of $2,565.58. The court overruled Delta Star's Statute of Frauds defense, finding that the contract "satisfied several of the exceptions to the statute of frauds set forth in Code Section 8.2-201."

We awarded Delta Star this appeal in which Delta Star contends that the trial court erred (1) "in ruling that the contract was enforceable under the statute of frauds on the theory that the goods at issue were specially manufactured;" (2) "in finding that there was a confirmatory writing establishing the existence of a contract for the purchase and installation of flooring [in the main office];" (3) in relying "on the customary manner of dealing between the parties to establish the existence of an enforceable contract;" (4) "in finding that three separate work orders constituted a single contract between the parties and by ruling that the purchase of the entryway carpet constituted part performance of such contract, thereby taking the contract out of the statute of frauds;" and (5) "in ruling that Delta Star, Inc. admitted in its testimony that there was a contract for the flooring in [the main office]."

II

2

On April 22, 2006, Ivan Tepper, President and Chief Executive Officer of Delta Star, visited one of Michael's showrooms to view flooring options for his office, his executive assistant's office, and the entryway to the offices. Tepper was met by Tommy Martin, Michael's sales manager, and viewed the samples displayed in Michael's showroom. Tepper requested pricing information on the three types of flooring that he selected for the two offices and entryway. At that meeting, Tepper told Martin that his only contact at Delta Star would be Tepper's executive assistant, Donna Nash.

On April 25, 2006, Martin measured the three areas at Delta Star and submitted three written proposals describing the work to be done and the materials to be used for each area. On May 2, 2006, Martin discussed with Nash revisions to the proposals. On that same day, revised proposals, together with a credit application, were sent to Nash. On May 5, 2006, Nash sent a credit application to Michael's seeking "90 days same as cash." All transmissions between the parties were made via facsimile.

The conditional sales contract forms used by Michael's were prepared on May 31, 2006, and contain a hand-written reference to "P.O. #T551" and the notation "Per Phone" in the block for the customer's signature. Delta Star sent Michael's, via facsimile, Purchase Order No. T-551, dated July 25, 2006, which

3

contains a reference to "[c]arpet for entrance to lobby" and the price of $832.22.

Michael's completed installation of flooring in Delta Star's entryway and, on August 2, 2006, sent an invoice for $832.22. Nash told Martin to order the tile for the two offices and subsequently paid the invoice for the entryway flooring. Nash also told Martin that it was important to have the tile installed by early November 2006. When the materials arrived, Nash telephoned Martin and told him to install the flooring in her office, but not to install the flooring in Tepper's office. Martin responded that he could not do what Nash requested because the material had already been ordered.

Martin had never before ordered this type of flooring. The tile remains in Michael's warehouse.

### III

Code § 8.2-201 provides, in pertinent part, the following:

(1) Except as otherwise provided in this section a contract for the sale of goods for the price of $500 or more is not enforceable by way of action or defense unless there is some writing sufficient to indicate that a contract for sale has been made between the parties and signed by the party against whom enforcement is sought or by his authorized agent or broker. . . .

(2) Between merchants if within a reasonable time a writing in confirmation of the contract and sufficient against the sender is received and the party receiving it has reason to know its contents, it satisfies the requirements of subsection (1) against such party unless written notice of objection to its

contents is given within ten days after it is received.

(3) A contract which does not satisfy the requirements of subsection (1) but which is valid in other respects is enforceable

(a) if the goods are to be specially manufactured for the buyer and are not suitable for sale to others in the ordinary course of the seller's business and the seller, before notice of repudiation is received and under circumstances which reasonably indicate that the goods are for the buyer, has made either a substantial beginning of their manufacture or commitments for their procurement; or

(b) if the party against whom enforcement is sought admits in his pleading, testimony or otherwise in court that a contract for sale was made, but the contract is not enforceable under this provision beyond the quantity of goods admitted; or

(c) with respect to goods for which payment has been made and accepted or which have been received and accepted.

In the present case, no written contract that satisfies the requirements of subsection (1) of Code § 8.2-201 exists. Michael's, however, relies upon the exceptions set forth in Code § 8.2-201(3).  The trial court agreed with Michael's.

IV

We first consider the trial court's finding that the flooring materials were "specially manufactured goods or products for [Delta Star] and not readily suitable for sale [to] others in the ordinary course of [Michael's] business."  In so finding, the trial court relied upon our decision in Flowers

5

Baking Co. v. R-P Packaging, Inc., 229 Va. 370, 329 S.E.2d 462 (1985).

In Flowers Baking Co., a bakery engaged a cellophane-wrapping manufacturer to measure its cookie trays, determine the appropriate size for cellophane wrapping, and design artwork to be printed on the wrapping. The bakery's manager placed a verbal order for the wrapping, and the manufacturer sent the bakery a written acknowledgement of the order. 229 Va. at 372-73, 329 S.E.2d at 463-64. Thereafter, the manufacturer sent a sample roll of unprinted wrapping to be tested for sizing on the bakery's packaging equipment, and the bakery subsequently told the manufacturer to proceed with the order. The next day, the parties met to discuss the proposed artwork. Later, the cellophane wrapping, printed with the bakery's logo, was delivered to the bakery. Id. at 373-74, 329 S.E.2d at 464. Approximately ten days after receipt of the wrapping, which conformed to the specifications of the order, the bakery's manager notified the manufacturer that the wrapping was too short and that the printing was not centered. The bakery returned the wrapping to the manufacturer, and the manufacturer brought a breach-of-contract action against the bakery. Id. at 374, 329 S.E.2d at 464-65. This Court, relying upon Code § 8.2-201(3)(a), held that the parties' oral contract was enforceable because the cellophane wrapping "was manufactured to the size

6

required by [the bakery's] containers, was imprinted with [the bakery's] name and unique 'artwork,' and was completely produced by the [manufacturer]."  Id. at 376-77, 329 S.E.2d at 466.

The trial court's reliance upon Flowers Baking Co. is misplaced because the facts of that case are distinguishable from the facts in the present case.  In the present case, the flooring samples displayed in Michael's showroom are available to all customers, but all flooring materials selected by customers must be ordered directly from the manufacturer or distributor because Michael's keeps no inventory.  The flooring materials chosen by Delta Star were selected from the samples displayed, were not altered in any way to suit only Delta Star, and were suitable for sale to others in Michael's ordinary course of business.  Therefore, the flooring materials were not "specifically manufactured" for Delta Star, and the trial court erred in ruling that the parties' contract was enforceable under Code § 8.2-201(3)(a).

V

We next consider the trial court's finding that there exists a confirmatory writing establishing an enforceable contract, under Code § 8.2-201(2), for the purchase and installation of flooring in Tepper's office.  We do not agree that such a writing exists.

7

At trial, Michael's contended that its written proposals and its invoice for the purchase and installation of flooring in Delta Star's entryway constituted confirmatory writings. A "writing in confirmation of the contract" presupposes that there exists an oral agreement between the parties and necessarily follows the formation of such an agreement. The proposals, however, by definition, cannot constitute confirmatory writings because a proposal is an offer presented for acceptance or rejection. In submitting its proposals, Michael's sought to form a contract, rather than to confirm a contract.[*] Michael's invoice for the entryway flooring also cannot serve as confirmation of a contract for the purchase and installation of flooring in Tepper's office. The invoice confirms only the parties' agreement with regard to the entryway flooring.

VI

We now turn to the trial court's finding that an enforceable contract was established by the parties' course of dealing. Code § 8.2-202 provides, in pertinent part, that the "[t]erms with respect to which the confirmatory memoranda of the parties agree or which are otherwise set forth in a writing intended by the parties as a final expression of their agreement

_____

[*] Similarly, the credit application submitted by Delta Star and Michael's sketches regarding the proposed installations cannot serve as confirmatory writings, contrary to the findings of the trial court.

8

. . . may be explained or supplemented . . . by . . . course of dealing."  Pursuant to Code § 8.2-202, therefore, the parties' course of dealing is relevant only to explain or supplement the terms of the parties' contract.  The parties' course of dealing cannot establish the existence of a contract.  Therefore, the trial court erred in finding that the parties' course of conduct established the existence of an enforceable contract.

VII

Next, we consider the trial court's finding that there existed a single contract between the parties and that the installation of flooring in Delta Star's entryway constituted part performance thereof.  Delta Star contends that, even if the present case involves a single contract, rather than three separate contracts, the purchase and installation of the entryway flooring "does not take this case out of the Statute of Frauds."  We agree.

Pursuant to Code § 8.2-201(3)(c), a contract that is not evidenced by a sufficient writing is enforceable "with respect to goods for which payment has been made and accepted."  In the present case, payment has been made and accepted for only the entryway flooring.  Therefore, enforcement of any contract based upon part performance extends only to the entryway flooring and not to the purchase and installation of flooring in Tepper's office.

VIII

Finally, we consider the trial court's ruling that Delta Star admitted in its testimony the existence of a contract for the purchase and installation of flooring in Tepper's office. At trial, Michael's contended that Nash's testimony regarding her attempt to cancel that portion of the alleged contract dealing with Tepper's office constituted an admission that a contract existed because "you can't cancel something unless you're admitting that you got a contract and you want to cancel it." Delta Star contends that Nash did not admit that there existed a contract for the purchase and installation of flooring in Tepper's office.

We agree with Delta Star. A review of Nash's trial testimony reveals that she stated that Delta Star "didn't want to act on the estimate [for Tepper's office]." Nash further stated that Delta Star "hadn't agreed to . . . order [the flooring for Tepper's office] yet." Therefore, Nash did not admit the existence of a contract for the purchase and installation of flooring in Tepper's office, and the trial court erred in holding otherwise and in declaring the contract enforceable under Code § 8.2-201(3)(b).

IX

For the foregoing reasons, we hold that the trial court erred in overruling Delta Star's Statute of Frauds defense and

10

in finding that an enforceable contract existed between Michael's and Delta Star for the purchase and installation of flooring in Tepper's office.  Accordingly, we will reverse the judgment of the trial court and enter final judgment in favor of Delta Star.

<u>Reversed and final judgment</u>.