COURT OF APPEALS OF VIRGINIA

UNPUBLISHED

Present:  Judges AtLee, Chaney and Lorish
Argued at Lexington, Virginia


DAVID M. SOMERS

                                                      MEMORANDUM OPINION* BY
v.       Record No. 1608-23-3                          JUDGE VERNIDA R. CHANEY
                                                          APRIL 22, 2025
W.D. CAMPBELL AND SON, INC., d/b/a
 CAMPBELL INSURANCE


               FROM THE CIRCUIT COURT OF THE CITY OF LYNCHBURG
                              J. Frederick Watson, Judge

               James B. Feinman (Law Office of James B. Feinman, on briefs),
               for appellant.

               Jason W. Todd Jr. (Petty, Livingston, Dawson & Richards, PC, on
               brief), for appellee.


       David Somers (Somers) appeals the circuit court's order dismissing his breach of contract

claim against Campbell Insurance. Somers argues that Campbell owed him a duty to "procure and

maintain" insurance on his daughter, Lindsay Somers's (Lindsay), vehicle. Somers assigns nine

errors to the circuit court, but they all argue a single point: the circuit court erred by failing to find a

contractual relationship between the parties.[1] To form a contract, the parties must mutually intend

---

* This opinion is not designated for publication. *See* Code § 17.1-413(A).

[1] Somers's eighth assignment alleges that the circuit court erred by failing to award him
damages. Because this Court affirms the circuit court's finding that there was no contract, we do
not need to address Somers's argument concerning damages. *Commonwealth v. Swann*, 290 Va.
194, 196 (2015) ("The doctrine of judicial restraint dictates that we decide cases 'on the best and
narrowest grounds available.'" (quoting *McGhee v. Commonwealth*, 280 Va. 620, 626 n.4
(2010))); *Baldwin v. Commonwealth*, 43 Va. App. 415, 421 (2004) ("[A]ppellate courts do not sit
to give opinions on moot questions or abstract matters, but only to decide actual controversies
injuriously affecting the rights of some party to the litigation." (quoting *Hallmark v. Jones*, 207
Va. 968, 971 (1967))). Somers's ninth assignment asserts that the circuit court "erred in ruling it
was free to decline the '*invitation*' of Plaintiff Somers to enter judgment in his favor." Somers
abandoned this argument in his briefing to this Court, and so we do not consider it.

to enter a contract and support that contract with consideration. On appeal, Somers argues that there was a meeting of the minds and consideration sufficient to establish a contractual relationship. Seeing no error, this Court affirms the circuit court's judgment.

BACKGROUND

In September 2018, Somers purchased a 2012 Volkswagen Jetta for his adult daughter, Lindsay. Somers helped Lindsay obtain automobile insurance using Campbell Insurance, which Somers has a longstanding history of using. On Lindsay's behalf, Campbell obtained an insurance policy for the vehicle through Progressive Insurance Company. The policy listed Lindsay as the sole policyholder and Somers as a lienholder.

Somers was generally the individual in the family who made policy payments. Somers explained that Lindsay is "a single mom. . . . And she had some issues, so I always stayed on top of her insurance policy and things like that for her." Lindsay also had a history of inconsistently making payments on her automobile insurance premiums, so Somers made them on Lindsay's behalf through Campbell. Due to Lindsay's history of inconsistent payments, Progressive required her to make consistent payments on her new vehicle policy to remain eligible for future renewals or extensions. In 2015, Lindsay officially authorized Somers to act on her behalf regarding any policies handled by Campbell; this permission was never revoked to any party's knowledge.

Somers requested that Campbell adjust the premium payments to be paid annually, but Macon Bailey, a now-retired account manager for Campbell, informed Somers that Lindsay's express authorization was necessary to do this because she was the named insured. Somers declined Bailey's offers to (1) list Somers as an additional insured on the Progressive policy, (2) notify Somers by mail of any matters related to Progressive for Lindsay, and (3) pay Lindsay's premium by auto pay or, in the alternative, keep Somers's card on file for payments. Somers

wanted to allow Lindsay to be the sole named insured and, in the future, undertake the financial responsibility of being the sole insured. Somers stated that what he sought from Campbell was to (1) be protected in his interest as the lienholder and (2) be notified by Campbell if the policy was threatened by non-payment.

In November 2019, Somers asked Bailey to change carriers and find a new policy that would allow him to make annual payments. Bailey told Somers she would try to find another carrier, as Lindsay has "six months of continuous insurance." The parties differ as to what this phrase means. Somers asserts that this statement proves that Bailey "was maintaining the coverage that was in place for six months of continuous coverage." Bailey, however, contends that this phrase meant that Lindsay's vehicle was "still in the six-month period" that ran "[f]rom June to December." At this point, Bailey had not begun searching for a new policy.

On November 21, 2019, Progressive notified Lindsay that Lindsay's vehicle insurance was set to expire on December 7, 2019. Before Lindsay or Somers could renew, on December 7, Progressive terminated the policy for non-payment. Bailey informed Lindsay of this cancellation via letter on December 23, 2019. Bailey did not send the same notice to Somers, and no party procured a new insurance policy.

On December 31, 2019, Lindsay was involved in a single-vehicle accident when she crashed into a telephone pole. This accident damaged her vehicle beyond repair and damaged the pole Appalachian Electric Power (AEP) owned. On January 6, 2020, Somers spoke with Bailey about the accident, at which time Bailey informed him that Lindsay's vehicle insurance was canceled due to non-payment. Somers asserts that Campbell entered into an agreement to notify him of any issues relating to Lindsay's insurance, which Campbell denies.

Somers filed a breach of contract action against Campbell Insurance in the general district court seeking enforcement of the contract between himself and Campbell, as well as

damages to the vehicle and AEP pole. The court found that Somers "failed to establish by a preponderance of the evidence that a contract existed between the parties," holding that:

- "Somers'[s] longstanding insurance dealings with Campbell, despite Bailey's promise to notify him of any missed payments, does not suffice to form the basis of a contract between Somers and Campbell."

- There was no meeting of the minds or sufficient consideration to form a valid contract.

- Somers did not "prove by a preponderance of the evidence that he relied on Bailey's promise to notify him of any missed premium payments by Lindsay to his detriment."

After the general district court entered judgment in Campbell's favor, Somers appealed to the circuit court for a de novo bench trial.[2] Somers argued that Campbell breached its agreement with him to "procure and maintain" his daughter's insurance policy and to notify him if she failed to pay her premiums. After a hearing, the circuit court held that the parties had no contractual relationship concerning Lindsay's vehicle. The court stated, "the evidence does not support a finding that Campbell Insurance had any contractual duty to procure and maintain insurance to protect[] Somers's interest in [his daughter]'s Volkswagen."

ANALYSIS

Somers asserts that the circuit court erred by failing to find a contractual relationship between him and Campbell requiring Campbell to "procure and maintain" insurance on Lindsay's vehicle. "[W]hether [a valid] contract exists is a pure question of law." *Williams v. Janson*, 301 Va. 375, 380 (2022) (second alteration in original) (quoting *Spectra-4, LLP v. Uniwest Com. Realty, Inc.*, 290 Va. 36, 42 (2015)). However, findings of the existence of the elements required for contract formation—offer and acceptance, mutuality of intent, mutuality of obligation, a meeting of the minds—involve mixed questions of fact and law. *See Trotter v.*

---

[2] The parties agreed to argue the case to the circuit court based on the general district court's record, which included a transcript.

- 4 -

*Maxwell*, No. 1707-96-2, slip op. at 10, 1997 Va. App. LEXIS 534, at \*12 (Aug. 5, 1997) ("It is a question of law whether particular facts constitute a performance or breach of a contract; whether such facts have occurred is, on conflicting evidence, a question of fact." (quoting 17A C.J.S. *Contracts* § 630(a) (1963))).[3]

For example, "[t]he resolution of conflicting evidence bearing on an individual's mental capacity is a factual determination to be made by the trial court." *Bailey v. Bailey*, 54 Va. App. 209, 215 (2009) (quoting *Drewry v. Drewry*, 8 Va. App. 460, 467 (1989)). Likewise, "[w]here certain facts assumed by both parties are the basis of a contract, and it subsequently appears that such facts did not exist, there is no agreement." *Paddock v. Mason*, 187 Va. 809, 815 (1948) (quoting *Virginia Iron, Coal & Coke Co. v. Graham*, 124 Va. 692, 699 (1919)). "[W]hen the mutual agreement is to be gathered from the acts of the parties, their situation and the surrounding circumstances, it is for the jury to determine what were the intention and understanding upon which the minds of the parties met." *Cape Charles Bank v. Farmers Mut. Exch.*, 120 Va. 771, 778-79 (1917); *see also* Restatement (Second) of Contracts § 69 cmt. e (Am. L. Inst. 1981) ("In *Empire Mach. Co. v. Litton Business Tel. Sys.*, cashing a down-payment check and retention of the proceeds for several months was held to raise an issue of fact as to the payee's intention to accept an offer that accompanied the check." (citation omitted)).[4]

---

[3] "Although not binding precedent, unpublished opinions can be cited and considered for their persuasive value." *Castillo v. Loudoun Cnty. Dep't of Fam. Servs.*, 68 Va. App. 547, 572 n.7 (2018) (quoting *Otey v. Commonwealth*, 61 Va. App. 346, 350 n.3 (2012)); *see also* Rule 5A:1(f).

[4] The Virginia Supreme Court frequently looks to the statements of law set forth in the Restatement (Second) of Contracts. *See, e.g.*, *Montalla, LLC v. Commonwealth*, 303 Va. 150, 171 n.13 (2024) (citing the Restatement (Second) of Contracts § 205); *Wood v. Martin*, 299 Va. 238, 247 (2020) (quoting the Restatement (Second) of Contracts § 330 cmt. c & illus. 6); *Tingler v. Graystone Homes, Inc.*, 298 Va. 63, 106 (2019) (citing the Restatement (Second) of Contracts § 302(1)). Therefore, we find these provisions in the Restatement (Second) of Contracts persuasive.

"We begin our analysis by recognizing the well-established principle that all trial court rulings come to an appellate court with a presumption of correctness." *Wynnycky v. Kozel*, 71 Va. App. 177, 192 (2019) (quoting *Stiles v. Stiles*, 48 Va. App. 449, 453 (2006)). When reviewing factual determinations, an appellate court defers to the trial court's judgment, as it would "a jury verdict[,] and uphold[s its] findings unless they are plainly wrong or without evidence to support them." *Davis v. Holsten*, 270 Va. 389, 397-98 (2005). When conducting this analysis, the reviewing court views the facts in the light most favorable to the party that prevailed below. *Id.* at 398.

A valid contract requires mutual assent, or a "meeting of the minds," which "exists by an *interaction* between the parties, in the form of offer and acceptance, manifesting 'by word, act[,] or conduct which evince the intention of the parties to contract.'" *Spectra-4, LLP*, 290 Va. at 46 (alteration in original) (quoting *Green v. Smith*, 146 Va. 442, 452 (1926)). That the parties' "minds have met may be shown by direct evidence of an actual agreement, or by indirect evidence of facts from which an agreement may be implied." *Lacey v. Cardwell*, 216 Va. 212, 223 (1975) (quoting *Green's Ex'rs v. Smith*, 146 Va. 442, 452 (1926)). Both parties must have a "distinct intention common to both and without doubt or difference" in order for a court to find a meeting of the minds. *Phillips v. Mazyck*, 273 Va. 630, 636 (2007). By contrast, if the parties do not "have a distinct intention common to both and without doubt or difference, there is a lack of mutual assent and, therefore, no contract." *Id.* (quoting *Persinger & Co. v. Larrowe*, 252 Va. 404, 408 (1996)). "Ultimate resolution of the question whether there has been a binding settlement involves a determination of the parties' intention, as objectively manifested." *Snyder-Falkinham v. Stockburger*, 249 Va. 376, 381 (1995).

Here, the record demonstrates that no contract was formed between Somers and Campbell requiring Campbell to procure and maintain insurance on Lindsay's vehicle. The

record supports the circuit court's conclusion that the evidence was insufficient to prove that there was a meeting of the minds necessary to agree on terms of such contract or specificity of the alleged terms. While Somers relies on a conversation between himself and Bailey that Campbell would "try" to find another carrier to replace Progressive, this discussion is insufficient to establish a contractual agreement. The conversation was summarized by Bailey via notation in Campbell's accident report log. The notation reads "[Somers] doesn't like Progressive and wants me to find another carrier—advised will try now that [Lindsay] has [six] months of continuous insurance." The phrasing is neither definite nor specific enough to carry any premise of a contractual agreement into effect. Language that Campbell will "try" to find a new insurance carrier for Lindsay's vehicle is not specific enough to define the terms of a contract.

Though Somers and Campbell communicated about Lindsay's vehicle, Lindsay remained the sole named insured for any insurance policy on her vehicle. Virginia law requires insurance providers to send notice of cancellation or refusal to renew to the *insured* via written notice. Code § 38.2-2212(E) ("No cancellation or refusal to renew by an insurer of a policy . . . shall be effective unless the insurer delivers or mails to the named insured . . . a written notice of the cancellation or refusal to renew."). The required cancellation notice needs be sent only to the insured, not the lienholder unless the terms of the policy require lienholder notice. Code § 38.2-2208(B) ("If the terms of the policy require the notice of cancellation or refusal to renew to be given to any lienholder, then the insurer shall mail such notice and retain a copy of the notice . . . ."). Therefore, Campbell owed a duty solely to Lindsay to notify her of any policy changes. Campbell owed no similar duty to Somers.

The record shows that Campbell attempted to integrate Somers in the dealings of this policy by adding him as an insured, but Somers declined. Somers declined Campbell's offers to

list Somers as an additional insured on Lindsay's Progressive policy, notify Somers by mail of any matters related to Progressive for Lindsay, or pay Lindsay's premium by auto pay or keep Somers's card on file for payments. Lindsay ultimately remained the sole principal and named insured on the policy, so Campbell's duties as to the policy run to Lindsay alone. Despite Campbell's promise to notify him of any missed payments, this does not alone form the basis of a contract between Somers and Campbell:

> Words of promise which by their terms make performance entirely optional with the "promisor" . . . do not constitute a promise. Although such words are often referred to as forming an illusory promise, they do not fall within the present definition of promise. They may not even manifest any intention on part of the promisor.

Restatement (Second) of Contracts § 2 cmt. e; *see also Gratuitous Promise*, *Black's Law Dictionary* (11th ed. 2019) ("A gratuitous promise is [usually] not enforceable."). There was no meeting of the minds to constitute an offer nor was there consideration extending beyond Campbell's obligation to procure the initial insurance policy.

Somers argues that the parties' course of dealings is sufficient to create a contract. Somers points out that, when he insures other vehicles through Campbell, the agency maintains those policies for them. "[C]ourse of dealing" refers to "a sequence of conduct concerning previous transactions between the parties to a particular transaction that is fairly to be regarded as establishing a common basis of understanding for interpreting their expressions and other conduct." Code § 8.1A-303(b). However, a contract cannot be created solely through a course of dealing. "[T]he parties' course of dealing is relevant only to explain or supplement the terms of the parties' contract" and alone "cannot establish the existence of a contract." *Delta Star, Inc. v. Michael's Carpet World*, 276 Va. 524, 531 (2008) (citing Code § 8.2-202).

Somers argues that, as his insurance agent, Campbell had a responsibility or duty to protect his interests, including procuring and maintaining insurance on his and his daughter's vehicles.

Somers cites to no authority suggesting that Campbell owed him a fiduciary duty that extended to procuring insurance on his daughter's vehicle. Indeed, Somers's own briefing establishes that Campbell only owed a duty to procure insurance *for Somers himself*:

> It is now well established, in Virginia and elsewhere, that an insurance professional "owes a duty *to his principal* to exercise reasonable skill, care and diligence in effecting insurance. Thus, he may be held liable where he has breached a contract to procure insurance for his principal."

(Emphasis added) (first quoting *Filak v. George*, 58 Va. Cir. 500, 505 (Chesterfield Cir. Ct. May 24, 2002); and then quoting *Coyne & Delany Co. v. Selman*, 98 F.3d 1457, 1470 n.15 (4th Cir. 1996)). If there is any authority for the proposition that the relationship between Campbell and Somers made *Lindsay* Campbell's principal, Somers does not identify it, and it "is not the role of the courts, trial or appellate, to research or construct a litigant's case or arguments for him . . . ." *Bartley v. Commonwealth*, 67 Va. App. 740, 746 (2017).

Somers contends that since his daughter authorized him to act as an intermediary between her and Campbell regarding the insurance policy, Campbell was contractually required to notify him of any changes to the policy. Assuming arguendo that this creates a principal/agent relationship between Lindsay and Somers, this would not create a contractual agreement under which Campbell would be required to notify Somers of any changes to Lindsay's insurance. Code § 38.2-2212(E) requires insurance providers to send notice of cancellation or refusal to renew a policy to the insured via written notice. A similar notice need only be sent to the lienholder if the terms of the policy require lienholder notice. Code § 38.2-2208(B). The policy here includes no such requirement, and there is no caselaw to support a conclusion that an agency relationship would raise Somers to the level of a named insured such that Campbell would be required to notify him of any changes.

The circuit court did not err by finding that no contract existed between Somers and Campbell requiring Campbell to "procure and maintain" insurance on Lindsay's vehicle. The record supports the circuit court's conclusion that there was no mutual assent or consideration leading to the formation of a contract between the parties. Likewise, the course of dealing between Somers and Campbell did not establish a contract. Nor does any agency relationship or fiduciary duty run from Campbell to Somers requiring Campbell to procure and maintain insurance on Lindsay's vehicle.[5]

CONCLUSION

For the foregoing reasons, this Court affirms the judgment of the circuit court.

*Affirmed.*

---

[5] Somers also argues that Campbell is estopped from denying liability from Somers because Somers relied on Bailey's representation that she would "try to find insurance." This argument is not addressed in Somers's assignments of error. Further, Somers failed to provide any caselaw in support of his argument. Therefore, this Court does not reach this argument under Rule 5A:20(c), (e). *Fox v. Fox*, 61 Va. App. 185, 203 (2012) (declining to consider an issue on appeal because "appellant did not include the issue . . . in his assignments of error, [so] he cannot now argue this issue on appeal"); *Bartley*, 67 Va. App. at 744 ("Rule 5A:20(e) requires that an appellant's opening brief contain '[t]he principles of law, the argument, and the authorities relating to each question presented.' 'Unsupported assertions of error "do not merit appellate consideration."'" (alteration in original) (quoting *Jones v. Commonwealth*, 51 Va. App. 730, 734 (2008))).